In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-01-536 CR


____________________



PAUL REGIS STEWART, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Court No. 00-01-00180CR






OPINION





 Michael Moore was murdered in late 1996. In November 1999, Paul Regis Stewart
appeared at the home of the deceased's parents and confessed to Moore's murder. Stewart
returned to the parents' home the next day and confessed again to Moore's mother,
Henryella Nylander; the police were present then. Stewart was indicted for murder. In
March 2000, a jury found Stewart incompetent to stand trial, and he was committed to
Vernon State Hospital. (1) Almost a month later, Dr. Barry Mills, chief psychiatrist with the
hospital, filed, in accordance with statute, a report indicating that Stewart was competent
to stand trial. Defense counsel filed motions raising the issue of Stewart's competency to
stand trial. The trial court denied both motions at a hearing immediately prior to the
October 2001 trial. A jury found Stewart guilty of murder and assessed a punishment of
thirty years in the Texas Department of Criminal Justice--Institutional Division, along with
a fine of $5,000. Stewart raises three issues on appeal. 

Sufficiency of the Evidence


 We consider issue three first, because a successful legal sufficiency challenge
requires an acquittal rather than a remand to the trial court. Clewis v. State, 922 S.W.2d
126, 133 (Tex. Crim. App. 1996). Stewart contends the trial court erred in denying his
motion for instructed verdict for two reasons: (a) The evidence was insufficient to
"sufficiently corroborate" his out-of-court statements; and (b) the statements were
inadmissable because he was in a mental state of delusion and confusion at the time he
made the statements. His challenge to the denial of a motion for an instructed verdict is
a legal sufficiency challenge. See Madden v. State, 799 S.W.2d 683, 686 (Tex. Crim.
App. 1990). When reviewing the legal sufficiency, we look at all the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). 

 Stewart maintains his confessions to the murder are insufficient to sustain his
conviction. The Court of Criminal Appeals has held that an extrajudicial confession of
wrongdoing, standing alone, is not sufficient to support a criminal conviction under Texas
law; there must be other evidence showing that a crime has in fact been committed by
someone. See Rocha v. State, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000); see also Salazar
v. State, 86 S.W.3d 640, 643-44 (Tex. Crim. App. 2002). The other evidence does not
have to be sufficient by itself to prove the offense; the evidence must simply render the
commission of the offense more probable than it would be without the evidence. Id. 
Stewart appears to argue that the independent evidence must corroborate the identity of the
actor in a murder case. But that is not the law. The independent evidence need not
connect the defendant to the crime; it need only show a crime was committed. See Emery
v. State, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994).

 Here, the evidence shows, independently of Stewart's extrajudicial statements, that
a murder was committed. Moore was found shot in the chest. No weapon was found. 
The medical examiner determined the cause of Moore's death was a gunshot wound. This
evidence, coupled with Stewart's extrajudicial confession that he killed Moore by shooting
him, is legally sufficient to support the conviction.

 Stewart also contends his extrajudicial statements should not have been admitted,
because he was in "a mental state of delusion and confusion at the time he [made the]
statements." Claiming his Sixth and Fourteenth Amendment rights were violated, Stewart
relies on Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975), for the
proposition that "a person whose mental condition is such that he lacks the capacity to
understand the nature and object of the proceedings against him, to consult with counsel,
and to assist in preparing his defense may not be subjected to a trial." 420 U.S. at 171;
see also Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). Both
Drope and Pate address an incompetency to stand trial issue, not an admissibility of
evidence issue. 

 Stewart first confessed to Henryella and Baldwin Nylander. The Nylanders did not
seek Stewart out to receive his statements; neither did the police. Stewart appeared on the
Nylanders' doorstep in November 1999, spontaneously confessed to the murder, and told
them he was sorry. Stewart returned to their home the next day, and, after the police
arrived, confessed again to the murder and begged for forgiveness. The statements to the
Nylanders were admissible in evidence under Tex. R. Evid. 801, as admissions by a party-opponent. 

 The trial judge instructed the jury to disregard Stewart's statements if the jury found
the statements unreliable because of mental impairment. Any question regarding Stewart's
mental competence when he made the statements, as well as the truth of those statements,
was for the jury to weigh and evaluate. The jury heard testimony from many witnesses
concerning Stewart's conduct and mental state before and after his confessions. Moore's
parents, Stewart's mother, Stewart's grandmother, the police officers, the medical
supervisor at the jail, Stewart's former girlfriend, and Dr. Quijano, the psychologist, all
testified concerning his mental state. The Nylanders testified Stewart was in their home
on November 17, 1999, for two hours. He confessed to the murder, gave a detailed
description of how he did it, and explained why. Baldwin Nylander described the
confession as "plain and simple." Stewart's mother and grandmother testified to his
bizarre behavior a few days prior to the confession. But the supervisor at the jail testified
she believed Stewart was faking. Dr. Quijano, the psychologist who interviewed Stewart
at the jail on December 7, 1999, diagnosed him as psychotic and incompetent to stand trial
at that time. However, Dr. Quijano acknowledged he could not backtrack to November
17 to make a judgment on Stewart's competency then. Dr. Quijano also testified that a
confession is reliable and based on objective reality if certain criteria are met. He
explained those criteria, which the jury was free to consider.

 "The jury is the exclusive judge of the credibility of witnesses and of the weight to
be given their testimony." Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994);
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979). Likewise, "reconciliation of
conflicts and contradictions in the evidence is within the province of the jury." Losada v.
State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The jury may choose to believe
some testimony and disbelieve other testimony. See id. The trial court did not err in
admitting Stewart's confessions or in denying Stewart's motion for instructed verdict. 

 The confessions, coupled with the evidence that Michael Moore was murdered,
were legally sufficient to support the conviction. Issue three is overruled.

 Competency 


 In issue one, Stewart contends the trial judge erred (a) by refusing in October 2001
to conduct a competency hearing before a jury and (b) by failing to require the State to
prove beyond a reasonable doubt that he was competent to stand trial when it was shown
that he had a prior unvacated adjudication of incompetency. 

 In March 2000, a jury found Stewart incompetent to stand trial; he was committed
to Vernon State Hospital. See Tex. Code Crim. Proc. Ann. art. 46.02 (Vernon Supp.
2003). Article 46.02, section 5(i), provides that when the head of the facility to which the
defendant was committed discharges the defendant and the defendant is returned to the
court, a final report shall be filed with the court documenting the applicable reason for the
discharge. One of the statutory reasons provided by for the defendant's discharge is a
determination by the head of the facility that the defendant has attained competency to
stand trial. See art. 46.02, § 5(f) (Vernon 1979). The statute also provides that "[w]hen
the report is filed with the court, the court is authorized to make a determination based
solely on the report with regard to the defendant's competency, unless the prosecuting
attorney or the defense counsel objects in writing or in open court to the findings of the
report within 15 days from the time the report is served on the parties." See art. 46.02,
§ 5(i). 

 In accordance with statute, Dr. Mills filed with the trial court a report stating
Stewart was competent to stand trial. There is no record of any objection by Stewart's
counsel within the time frame provided by statute. Stewart's new trial counsel, appointed
after the report was filed, agreed to the admission of the report into evidence at the pre-trial hearing, although he indicated that he himself was not served with the report. 

 Under article 46.02, section 1A, a person is incompetent to stand trial if the person
does not have (1) sufficient present ability to consult with the person's lawyer with a
reasonable degree of rational understanding, or (2) a rational as well as factual
understanding of the proceedings against the person. After Stewart called his competency
into question by pre-trial motion, the trial court conducted a "competency inquiry." See
Alcott v. State, 51 S.W.3d 596, 599-600 (Tex. Crim. App. 2001). The trial court grants
a competency trial before a jury only if the court finds at a competency inquiry some
evidence of the defendant's incompetency. Id. The standard of review on appeal from a
trial court's failure to order a competency trial before a jury is whether the trial court
abused its discretion. See Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). 

 The evidence before the trial judge in the October 2001 hearing on Stewart's pre-trial motions was the following:

 (1) Prior unvacated judgment of incompetency on March 7, 2000; 


 (2) Dr. Mills' March 29, 2000, report -- including his express finding, as
head of the facility, that Stewart was competent to stand trial, as well as a
psychologist's opinion that if Stewart does not take his medication it is likely
he will again become incompetent;


 (3) Stewart's testimony at the hearing.


Article 46.02, section 5(i), is clear. The trial judge may rely solely on Dr. Mills' report
finding competency. Here, by statute, Dr. Mills' report finding Stewart competent to
stand trial rebutted any legal presumption of incompetency from the prior judgment. The
presumption once again was one of competency; the burden shifted to the defendant to
show otherwise.

 Other than the prior, rebutted judgment of incompetency, appellant did not bring
forward sufficient evidence, certainly not a scintilla, to show he was incompetent. 
Although he testified he had not taken any medication for his condition since his release
from jail in May 2000, he responded in a cogent and rational manner when the trial judge
and his counsel questioned him during the hearing. There was no indication he did not
understand the proceedings or that he could not assist his counsel. The psychologist's
statement, included in Dr. Mills' report, indicating that Stewart's failure to take his
medication would likely cause incompetence to recur, was insufficient without evidence
of incompetency. The trial judge did not abuse his discretion in refusing to empanel a jury
to determine appellant's competency to stand trial. Issue one is overruled.

Extraneous Offenses


 In issue two, Stewart argues the trial court erred in admitting into evidence certain
extraneous offenses in the guilt/innocence and punishment phases of the trial.

Guilt/Innocence Phase


 "Relevant evidence of a person's bad character is generally not admissible for the
purpose of showing that [the person] acted in conformity therewith." Robbins v. State, 88
S.W.3d 256, 259 (Tex. Crim. App. 2002). However, the evidence may be admissible
during guilt/innocence if it is relevant to a non-character issue of consequence in the case. 
Id. The State says the extraneous offenses are admissible because they show the
relationship between Stewart and Moore. Stewart argues the evidence is inadmissible
because it is irrelevant and does not fall within an exception to Tex. R. Evid. 404(b). He
also states the offenses are too remote in time to be admissible; however, he offers no
argument, statute, or case law to support his contention of remoteness, and we do not
consider it. See Tex. R. App. P. 38.1(f).

 Stewart references three instances of the erroneous admission of extraneous
offenses: 

 (1) James LeBlanc testified about an occurrence at a bar several weeks before the
murder when Moore and Stewart got into an argument. LeBlanc said Stewart had a
threatening look and appeared to prepare himself to "perform some sort of martial arts"
on Moore. Stewart and Moore exchanged profanities, not blows. LeBlanc explained that
tension remained between the two men after the incident. The testimony is relevant to the
element of motive and the "bad blood" relationship between Moore and Stewart. See Tex.
R. Evid. 401, 404(b); see also Tex. Code Crim. Proc. Ann. art. 38.36 (Vernon Supp.
2003). Furthermore, evidence regarding the incident at the bar came in, without objection,
during the testimony of the Nylanders. See Leday v. State, 983 S.W.2d 713, 718 (Tex.
Crim. App. 1998). Moore's parents said Stewart told them he killed Moore because of a
misunderstanding between the two men at a party at the bar. 

 (2) Alexander Dublin testified that he saw Stewart, Moore, and Khris Brock shortly
before the murder at the TNT convenience store, located next door to the victim's house. 
Appellant did not object to Dublin's testimony. To preserve error, a party must timely
object and obtain a ruling. Tex. R. App. 33.1. Furthermore, testimony placing Stewart
in the store with Moore shortly before Moore's murder is relevant to the issue of
opportunity and does not constitute character evidence violative of Rule 404(b).

 (3) Edward Stone witnessed an argument between Stewart and Moore after a 1993
basketball game. Stone testified the game was physical, and there was "trash-talking." 
Afterwards Stewart and Kevin Moore, the deceased's brother, argued and appeared ready
to fight. Michael Moore stepped in between them and told Stewart he should fight
someone more his size. No fight occurred, but Stone said the relationship between
Michael Moore and Stewart was "strained." Stone also testified about the 1996 incident
at the bar where he saw Moore and Stewart arguing in the parking lot. Stone said there
was no relationship between the two after that. Relevant to the issue of motive and
relationship, both incidents were admissible under article 38.36 and the motive exception
to Rule 404(b). 

Punishment Phase


 Stewart also argues the trial court erred in admitting extraneous offense evidence 
during the punishment phase. Appellant says the extraneous offenses are not relevant. (2) 
We review the trial court's admission or exclusion of evidence under an abuse of discretion
standard. See Mitchell v. State, 931 S.W.2d 950, 953 (Tex. Crim. App. 1996). 
Admission of evidence during punishment is governed by article 37.07, section 3(a), of the
Code of Criminal Procedure and the Rules of Evidence. Rogers v. State, 991 S.W.2d 263,
265 (Tex. Crim. App. 1999). Punishment evidence encompasses any matter the court
deems relevant to sentencing, such as the defendant's prior criminal record, general
reputation, his character, and "any other evidence of an extraneous . . . bad act that is
shown beyond a reasonable doubt by evidence to have been committed by the defendant
. . ." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2003). The
Court of Criminal Appeals has said that what is relevant in the punishment phase is a
question of "what is helpful to the jury in determining the appropriate sentence." Rogers,
991 S.W.2d at 265. 

 During the punishment phase, the State offered evidence of a traffic stop in
February 1999 when Stewart was carrying a loaded 9mm pistol in the vehicle, and
evidence of assaults on two jailers following his arrest in November 1999. The prior acts
were relevant to a consideration of Stewart's dangerousness and informative to the jury in
tailoring the sentence. Rogers, 991 S.W.2d at 266.

 Stewart maintains he cannot be held responsible for the assaults because he was not
competent during that period of time, as evidenced by Dr. Quijano's diagnosis of Stewart's
psychosis on December 7, 1999. The jury also heard testimony from the medical
supervisor at the jail: although she initially believed Stewart had mental problems, she
finally concluded he was "faking." The jury is the exclusive judge of the credibility of
witnesses and of the weight to be given their testimony. Tex. Code Crim. Proc. Ann.
art. 38.04 (Vernon 1979). There was no error in admitting the extraneous offenses into
evidence during the punishment phase. 

Rule 403


 Stewart also argues the extraneous offense evidence in guilt/innocence was
inadmissible under Tex. R. Evid. 403, which provides as follows: "Although relevant,
evidence may be excluded if its probative value is substantially outweighed by the danger
of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations
of undue delay, or needless presentation of cumulative evidence." 

 Factors considered in a Rule 403 analysis include: 1) how compellingly the
extraneous act evidence serves to make a fact of consequence more or less probable; 2) the
potential for the extraneous act evidence to irrationally but indelibly impress the jury; 3)
the trial time expended developing the evidence; and 4) the strength of other evidence
available to prove a fact of consequence. See Santellan v. State, 939 S.W.2d 155, 169
(Tex. Crim. App. 1997). "Rule 403 favors the admission of relevant evidence and carries
a presumption that relevant evidence will be more probative than prejudicial." Hayes v.
State, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). We will not disturb the trial court's
decision on appeal unless the decision falls outside the zone of reasonable disagreement. 
Id. 

 Other than Stewart's confession, evidence implicating him in the murder is
circumstantial. Given the theories offered by the defense, the State had a compelling need
to establish Stewart's motive for the murder -- a fact of consequence evidenced by the 
"bad blood" relationship between Stewart and Moore and testified to by LeBlanc and
Stone. Testimony concerning the prior arguments at the bar and at the basketball game did
not have the potential to impress the jury in some irrational but indelible way; the evidence
was not graphic, explicit, or offensive; and the evidence was not a large part of the
voluminous record. The probative value of the extraneous offense testimony admitted at
guilt/innocence was not substantially outweighed by the danger of unfair prejudice. During the punishment phase, no Rule 403 objection was made to the jailers'
testimony about Stewart's assaultive acts against them or to the officer's testimony about
the traffic stop and the discovery of the gun in Stewart's vehicle. Any Rule 403 complaint
regarding the punishment phase is waived. See Tex. R. App. P. 33.1(a). 

 We conclude the trial court did not abuse its discretion in admitting the extraneous
acts into evidence. Issue two is overruled. 

 Having overruled Stewart's three issues, we affirm the conviction.

 AFFIRMED.

 PER CURIAM


Submitted on February 11, 2003

Opinion Delivered March 26, 2003

Do not publish 


Before McKeithen, C.J., Burgess, and Gaultney, JJ.
1. Stewart was also found incompetent to stand trial on a different charge in
December 1999. 
2. Appellant appears to suggest that convictions are required before the bad acts are
admissible in the punishment phase. However, article 37.07, section 3, of the Code of
Criminal Procedure has no such requirement. See Romero v. State, 34 S.W.3d 323, 326
(Tex. App.--San Antonio 2000, pet. ref'd).