## A. D. KINCAID V. THE STATE.

No. 18275. Delivered June 10, 1936.
Rehearing Denied (Without Written Opinion) October 14, 1936.

The opinion states the case.

*Ramey A. Smith,* of Sulphur Springs, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for incest; punishment, two years in the penitentiary.

There are twelve bills of exceptions, each of which has been carefully considered, but none of which are believed to present error. The indictment charged as follows: "Did then and there unlawfully carnally know Mattie Lou Giles, the said Mattie Lou Giles then and there being the daughter of Mrs. Annie Giles, the sister of the said A. D. Kincaid." Appellant attacks the sufficiency of this averment, insisting that it is indefinite and does not enable him to know therefrom whether Mattie Lou Giles or Mrs. Annie Giles was meant by the expression "the sister of the said A. D. Kincaid." We do not agree to this. We think the statement of the indictment clear, and

that it was the mother of prosecutrix in this case, who was the sister of appellant.

Several bills of exceptions relate to the admission of testimony of witnesses as to the relationship of the mother and daughter, the objection to which is based upon the supposed insufficiency of the indictment. Complaint is made by one bill of the overruling of an application for a continuance or postponement because of the illness of appellant. We find nothing in the record supporting any proposition of necessity for such continuance, or any fact showing injury as the result of the refusal thereof.

From our examination of this record, we are led to observe that the claimed rights of appellant appear to have been unusually well guarded by the learned trial judge who gave all of the special charges asked and a lengthy supplemental charge, and in his main charge gave to appellant the benefit of a clear instruction upon every doubtful issue, or issue which might have been deemed favorable to the accused. The only request seemingly denied by the trial court was that for an instructed verdict.

The State introduced appellant's written confession. The trial judge told the jury that it was for them to determine whether the written statement was voluntarily made, and also whether it was understood by the accused at the time it was made, and if they entertained a reasonable doubt as to whether the accused did understand, or that he was induced to make it by any persuasion, coercion or improper influence, the jury should not consider it. Appellant testified on the trial that he was hard of hearing, and claimed that he did not understand the contents of said written confession. The court gave a special charge to the jury that if the evidence raised in their minds a reasonable doubt as to whether appellant did hear or understand the written confession, they should disregard it and not consider it for any purpose.

Claiming that there was not sufficient evidence to corroborate the confession, the accused asked a special charge that the jury be instructed not to convict the accused unless there was other evidence corroborating said confession and tending to connect the accused with the crime charged. This instruction was given. There was a contention made by appellant that he was of low mentality, and a special charge was asked instructing the jury that even though the State might have proved facts which constituted the offense, they could not convict if they found from the evidence that the accused was in a mental

condition in which he was irresponsible and did not know or realize the nature and consequences of his acts. The court gave this charge. Appellant testified on the trial that he had had the mumps and by reason thereof he could not perform the physical act of intercourse. A special charge was asked by appellant upon this issue, which was also given.

As we view the record, the only question is as to the sufficiency of the testimony. It was shown without dispute that prior to the death of appellant's wife the couple had deeded their farm to appellant's niece, Mattie Lou Giles, who was making her home with them. After the death of the wife, appellant with his niece, who was a young, strong, vigorous woman around thirty years of age, continued to make their home on said farm. Witnesses for the State and defense testified that the young woman visited almost nobody. Her nearest neighbor testified that she lived within "hollering distance" of appellant, and that the young woman in question had no visitors to amount to anything, and did not visit among the neighbors. This lady was a defense witness. No sort of attack was made upon the chastity of the prosecutrix even by suggestion, except that one witness for the defense testified that at a time when appellant was not at home he saw a car come to the house and saw the young woman get in it and go away, and afterward she came back to the house and got out and went in with a man. Upon cross-examination this witness admitted that he was under conviction and serving a suspended sentence for a felony. The testimony further showed that about a year after the death of the wife appellant called a doctor over a telephone at night to come to his place. The doctor came, after being assured by appellant that he would be paid for his services. This doctor testified that he delivered prosecutrix of a well developed eight-pound baby girl. The young woman at the time of her delivery was admittedly occupying a bed in the room which appellant usually occupied. He paid the doctor in part for his visit that night. The testimony showed that appellant and the young woman in question had lived alone in said house since the death of appellant's wife; that they occupied adjoining rooms, and that the young woman did the work around the house. She did not testify. The statement of facts shows that she was tendered as a witness by the State, but an objection made by appellant was sustained and her testimony was not introduced. The county attorney of the county testified that a few days after the birth of the child, appellant made to him in his office a written confession, which he wrote down

in the language used by appellant. The witness said: "He said to me the things I wrote down there which I read to the jury." This confession is as follows:

"The State of Texas, County of Hopkins.

"May the 11th, A. D. 1935, I, A. D. Kincaid, do hereby make the following free and voluntary statement to Wm. J. Fanning, County Attorney of Hopkins County, Texas, about and concerning incest charges on Mattie Lou Giles on the date of June 15th, July 15th, A. D. 1934.

"I make this statement after being warned by the said Wm. J. Fanning, County Attorney of the county and state aforesaid, that I do not have to make this or any other statement concerning said incest charges and that any statement made by me may be used in evidence against me upon any trial for the offense of incest concerning which I am voluntarily making a statement and that this statement cannot be used in evidence for me.

"My name is A. D. (Dean) Kincaid. I am 61 years of age. My wife died May 8th, 1934. Right before her death in April, we deeded our 56 acre farm to Mattie Lou Giles, Mattie Lou Giles is the daughter of my sister, my sister is dead, her name was Cynthia Ann Kincaid Giles, her husband's name was Allie Giles, they lived in Sherman, Texas, and are both dead. Mattie Lou is their daughter and is my niece. About the 15th day of July, 1934, I first had sexual intercourse with Mattie Lou Giles, she was willing. I asked her for it at night and told her that I had had the mumps and they had gone down on my testicles and the doctor had told me that I could not be a father. So we went ahead and did it one time. She told me that she had never had had intercourse with anyone. I don't believe she ever had had intercourse with anyone either because she bled some when I first tried to put it in and I had difficulty in having a complete act of intercourse. The baby was born May 6th. Dr. A. F. Payne waited on her. It was a girl baby. I know that I am the father of that child, I know of my own knowledge that no other man has had intercourse with her and that I am the father of that baby. I do not know whether she has ever been married. When she got pregnant and had the baby, she told me for us to tell that she was married and that Willie D. Giles was the father of the baby. I love Mattie Lou Giles.

"A. D. Kincaid."

Practically, appellant's only contention, as above stated, is

that the evidence is not sufficient, his proposition being that the confession is not sufficiently corroborated.

In his brief appellant cites Cokeley v. State, 220 S. W., 1099; Garcia v. State, 256 S. W., 597, and the opinions in three cases of Masten v. State, found at 271 S. W., 920, 6 S. W. (2d) 367, 20 S. W. (2d) 780, and Nolan v. State, 129 S. W., 1108. The Masten cases all turned upon the insufficiency of the testimony to corroborate an accomplice witness. The Cokeley case, supra, was one involving rape of an insane woman. This court entertained serious doubt as to the sufficiency of the proof of the insanity of the woman and suggested that the issue should be submitted to the jury. In this case also the court said there were no facts or circumstances corroborating the confession of the accused. We do not regard either of the cases cited by appellant as affording support for appellant's contention, which must rest upon the facts of this particular case and the law applicable thereto.

It would hardly be contended that the same rule should be applied to the corroboration of the confession as to the corroboration of an accomplice. By express statute it is made imperative that an accomplice be corroborated by evidence tending of itself to show the guilt of the accused, but we have no such statute requiring corroboration of the confession. An accomplice is ipso facto a tainted witness,—tarred with guilty connection with the very crime whose punishment is sought to be inflicted upon another by the aid of his testimony. How different the case of a person who confesses his own guilt, and in a sense seeks punishment not for another but himself. What is meant by corroboration as required by rules of evidence, but not of statute in this State, as applied to what is corroboration of a confession? Black's Law Dictionary defines corroboration as "To strengthen, or add weight and credibility to a thing." This was expressly approved by this court in Still v. State, 50 S. W., 355. See, also, Salter v. State, 163 Ga., 80. In Chapman v. Chapman, 181 Iowa, 801, the Supreme Court of Iowa said: "Corroboration is something that leads an impartial and reasonable mind to believe that material testimony is true." In Lassiter v. Seaboard Air Line Ry., 171 N. C., 283, the Supreme Court of North Carolina said that since the question of credibility is one for the jury, the question of the sufficience of corroboration is also one for the jury, —the meaning of corroboration being to make more certain, to confirm, to give additional strength to other testimony before the jury. Much akin to this is our conclusion in the leading

case of Kugadt v. State, 38 Texas Crim. Rep., 681, from the opinion of Presiding Judge Hurt in which case we quote:

"In other words, in the establishment of the corpus delicti, the confessions are not to be excluded, but are to be taken in connection with the other facts and circumstances in evidence. See note 3 to case of State v. Williams, reported in 78 Am. Dec., p. 254. And this rule is recognized in this State. See Jackson v. State, 29 Texas Crim. App., 458. Said case quotes with approval an excerpt taken from 4 American and English Encyclopedia of Law, p. 309, as follows: 'A confession is sufficient, if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of the defendant's guilt in the minds of a jury beyond a reasonable doubt.' 'Such suppletory evidence need not be conclusive in its character. When a confession is made, and the circumstances therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury in rendering a verdict asserting the guilt of the accused."

In many of the cases on the point under discussion appear statements to the effect that a *bald* confession without other circumstances to sustain it, will not suffice; or that the *naked* confession of one accused, will not be enough; but none of the cases attempt to lay down any arbitrary rule, and the substance of their holdings is that it is only necessary that there be other facts and circumstances in evidence strengthening and confirming the fact that a crime has been committed with which the accused identifies himself by his confession. For instances, in Austin v. State, 51 Texas Crim. Rep., 327, a conviction for rape was upheld where, in addition to proof of a prior judicial confession of the accused, the only corroborative proof was that appellant spent the night of the alleged rape in a room with prosecutrix, a girl under the age of consent, whom he married shortly thereafter, and who was not a witness at his trial some ten months later because of pregnancy. Judge Henderson said in the opinion in that case:

"The jury were distinctly told that the confession alone was not sufficient to prove carnal knowledge by defendant of Louida Allen. They were then instructed if they believed from the evidence that the defendant admitted or confessed that he had carnal knowledge of Louida Allen, and if they further believed such confession had been corroborated by circumstantial evidence, and if from the whole evidence they believed beyond a reasonable doubt that defendant had such carnal

knowldge of Louida Allen, and that she was a female under 15 years of age, and not the wife of defendant, to find him guilty as charged. While this singles out the character of testimony adduced on the trial to prove the corpus delicti, it left the matter of fact to be determined by the jury, and required them to believe same beyond a reasonable doubt."

In Fredrickson v. State, 44 Texas Crim. Rep., 288, a conviction for rape was upheld upon proof that the girl was pregnant; that the accused had opportunity for connection with her, and that he confessed his crime. In Anderson v. State, 34 Texas Crim. Rep., 546, we held that a confession could be corroborated by the testimony of an accomplice. See, also, Schoenfeldt v. State, 30 Texas Crim. App., 695. In Harris v. State, 64 Texas Crim. Rep., 594, we said:

"It is true that this court has held, and it is well established, that a confession alone in and of itself, is insufficient to support a conviction in a case of this character, or any other. It is needless to cite the authorities to that effect because they are uniform. But it is as firmly established by the decisions of this court that the confession may be used to aid the proof of the corpus delicti, and if all of it together is sufficient to satisfy a jury of the truth of the charge beyond a reasonable doubt, the conviction must be sustained," this upon citation of many authorities.

At the risk of needlessly lengthening this opinion we call attention to certain circumstances in this case aside from the naked or bald confession that appellant had carnally known his niece,—First: they had been living together alone in the same house, sleeping in adjoining rooms, being together night and day for a year. This gave association and opportunity. She gave birth to a child. See Barrett v. State, 55 Texas Crim. Rep., 182; Harris v. State, 64 Texas Crim. Rep., 605. This established intercourse. Austin v. State, 51 Texas Crim. Rep., 327. She kept company with no other man, and save for the testimony of a self-confessed felon,—had not been seen in company with any other man save appellant during that year; she visited no one, and no one visited her; Dr. Payne swore that he did not believe any ordinary man could be with a pregnant woman during such period and not discover it. Appellant swore that he had been with said woman during all of said time and had no idea she was pregnant; appellant called the doctor to come out to wait on the woman on the night of the birth of the child, and guaranteed payment for his coming; he paid part of the doctor's bill. When the doctor got there he found

the woman in the bed usually occupied by appellant; the record fails to reveal any expression of surprise to the doctor who delivered the child, or to the women who aided; apparently appellant made no claim to anyone that some other than himself was the father of the child; a few days later he made a written confession that was neither bald nor naked, but used such language and went into such details, and stated such facts in connection with and surrounding the affair as must have carried to the jury hearing same complete conviction of the truth of these corroborative details, as well as the fact of carnal connection. In Sims v. State, 91 Texas Crim. Rep., 570, Judge Morrow says:

"The point made against it is that neither the theft nor the venue thereof in Kaufman County had been proved by other evidence. The objection we think would go to the weight rather·than to the admissibility of the evidence. The confession was definite to the effect that the theft had been committed by the appellant and another in Kaufman County; and details are given touching the manner of acquiring the property and its concealment and disposition. These details were corroborated by other evidence sufficient to show that the theft was committed by the appellant, and that it took place in Kaufman County."

Again in Bennett v. State, 95 Texas Crim. Rep., 426, Judge Morrow says:

"The law does not demand that independent evidence shall establish the corpus delicti. It merely requires that the evidence independent of the confession, together with the confession, shall do so."

Looking further for corroboration which may be found in appellant's testimony when a witness on this trial, we find that he denied in one place that the woman was his niece, and later admitted it. He denied making the confession, and testified he thought he was signing a bond, but three credible witnesses swore that he made the confession after having been fully warned, and that the language and details set out in the writing were his own, which clearly show that he knew what he was saying and did not believe he was signing a bond. He was asked while a witness if he did not say to the man taking the confession that he told the woman that he had had the mumps, and in substance that he could not impregnate her. He said he would not deny this but did not remember it. He said the same thing as to other damaging statements appearing in the confession, the nature and substance of which could have been

known to no one save himself and the woman. No stronger circumstance of guilt exists than the fabrication of testimony in defense against crime. We are deprived of the woman's version of the affair, for when she was offered as a witness appellant objected and she did not testify. Appellant as a witness claimed to be sterile from mumps, but made no effort to have this fact investigated. He swore that he had had the mumps, and that his doctor told him he could not get a child. The doctor who waited on him when he had the mumps not only declined to say that appellant was sterile for this or any other reason but he affirmed that in possibly one per cent of such cases sterility might follow, and said that in all of his own experience he had only known two such instances, and he did not say appellant was one of them.

We conclude this opinion with the statement that three things are necessary of establishment in incest cases: (1) the defilement of the woman; (2) the relationship of the accused, and (3) that the accused was the defiler. In this case relationship was established aside from the confession, as was the fact that the woman had been carnally known by some man. That the other circumstances and facts in this case taken together, with the confession, fully and completely establish the corpus delicti, and were enough to satisfy the jury beyond a reasonable doubt of appellant's guilt, seems clear.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*