COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-258-CR

 

 

RICHARD EARL DANIELS                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                   MEMORANDUM
OPINION[1] ON
REHEARING

 

                                              ------------

I.  Introduction

After considering our prior opinion on the State=s motion for
rehearing, we deny the motion.  We
withdraw our July 26, 2007 opinion and judgment and substitute the following.








In five points, Appellant Richard Earl Daniels appeals his
conviction of and twenty-three-year sentence for aggravated sexual
assault.  Overruling points one, four,
and five, and sustaining points two and three, we affirm in part and reverse
and render in part.

II.  Factual and
Procedural Background

Daniels and his girlfriend, Sherry Washington, moved from
Waco to Wichita Falls in late 1993 or early 1994.  After getting settled in, Washington began
babysitting C.A., a then seven-year-old girl with severe mental retardation.[2]  For the next decade, Washington continued,
off and on, to babysit C.A.  








On Christmas Eve 2004, Washington babysat C.A. at the house
that she shared with Daniels.  Washington
testified that C.A. was asleep on the floor in the spare upstairs bedroom when
she and Daniels went to bed just before midnight.  Washington further testified that in the
early hours of Christmas morning, she was awakened by C.A.=s laughter.  Noticing that Daniels was not still in bed
with her, Washington got up and went to C.A.=s room.  Turning on the light in the hallway,
Washington found Daniels in C.A.=s room kneeling
over C.A. with his Apenis between her butt cheeks.@  C.A.=s pull-up diaper
was pulled down halfway to her knees. 

Washington did not call the police.  A few days after Christmas, however, she
mentioned the incident to some ladies at her church.  Washington testified at trial that she told ASister Jessica@ that she had
caught Daniels having sex with C.A. 
After the ladies at the church conferred with the pastor, they phoned
police, who thereafter contacted Washington. 

Washington told Officer Ronnie Sheehan of the Wichita Falls
Police Department that she had seen Daniels having sex with C.A.  She had caught Daniels on top of C.A. with
his underwear down and his Apenis between her
butt cheeks.@ 
Officer Sheehan testified that Washington reported to him that Daniels
had apologized to her and said he would work everything out.  Daniels was arrested and booked by Deputy Darryl
Waddelton.  Deputy Waddelton testified
that during the book-in process, Daniels made the following statement: Athat he had had
sex with a girl and that he had apologized to his girlfriend about it.@ 








C.A. was not medically examined until nearly a month after
the alleged assault.  No evidence of
sexual assault was observed by Dr. Leo Mercer upon his review of the photo
images obtained during the examination of C.A. 
However, as Dr. Mercer testified at trial, it is Anot unusual if you
have opportunity to do an exam one month after an alleged event to have an exam
that doesn=t show the elements of an acute injury.@

At trial, the State introduced into evidence a video taped
interview of Daniels speaking with Detective Tony Fox.  On the tape, Daniels told Detective Fox that
on December 24, 2004, C.A. spent the night at the house that he shared with his
girlfriend.  He told Detective Fox that
while Washington was asleep in their room, he got up and went to the room in
which C.A. was sleeping.  Daniels stated
on the tape that C.A. wore pull-ups, and that he had pulled them down and was
rubbing his penis on her Abutt cheeks.@  Daniels repeatedly claimed that there was no
penetration, but later admitted that there was penetration by accident.  When Washington caught Daniels kneeling over
C.A., he got up and told his girlfriend that he was sorry.  Daniels was charged with one count of
aggravated sexual assault, i.e., that he did Aunlawfully,
intentionally[,] and knowingly cause the penetration or contact of the anus and
female sexual organ of [C.A.,] a person who was then and there a disabled
individual, by [his] sexual organ, without [her] consent.@[3] 








Daniels also made statements on the tape in which he
implicated himself in two prior assaults on C.A. alleged to have occurred in
June 2002 and June 1995.  Counts 2 and 3
of the indictment address those acts. 
Count 2, much like Count 1 above, was for aggravated sexual assault of a
disabled individual.  Count 3, however,
for the alleged 1995 assault, charged that Daniels did Aunlawfully,
intentionally, and knowingly cause the [contact[4]]
and penetrate the anus and [female] sexual organ of [C.A.] and [C.A.] was a
child younger than 14 years of age[,] and a person who was then and there a
disabled individual.@[5] 

At the conclusion of the State=s case, Daniels
moved for an instructed verdict of acquittal as to all three counts of
aggravated sexual assault.  The trial
court overruled the motion.  The jury
subsequently convicted Daniels of all three counts of aggravated sexual assault
and assessed his punishment at twenty-three years= confinement.[6]  Daniels brings five points on appeal.

 








III.  Legal
Sufficiency

In his first three points, Daniels claims that the trial
court erred by overruling his motion for an instructed verdict of not guilty as
to all three counts of the indictment. 
In sum, Daniels argues that the evidence presented in this case is
legally insufficient to support the verdict because the State failed to offer
any independent evidence of the corpus delicti for the offenses alleged to have
been committed in December 2004, June 2002, and June 1995.  We disagree as to point one regarding Count
1, and agree as to points two and three regarding Counts 2 and 3, respectively.


A.  Standard of
Review

An appeal from the denial of a motion for an instructed
verdict is the same as a challenge to the legal sufficiency of the evidence to
support the conviction.  Dunn v. State,
951 S.W.2d 478, 480 (Tex. Crim. App. 1997). 
In reviewing the legal sufficiency of the evidence to support a
conviction, we view all the evidence in the light most favorable the verdict in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Hampton v. State, 165 S.W.3d 691, 693
(Tex. Crim. App. 2005).








This standard gives full play to the responsibility of the
trier of fact to resolve conflicts in the testimony, to weigh the evidence, and
to draw reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789.  The trier of fact is the sole
judge of the weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the fact-finder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

B. Applicable Law








An extrajudicial confession by the accused is insufficient
to support a conviction unless corroborated. 
Gribble v. State, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990), cert.
denied, 501 U.S. 1232 (1991).  The
corpus delicti rule is a rule of evidentiary sufficiency that can be summarized
as follows: Aan extrajudicial confession of wrongdoing,
standing alone, is not enough to support a conviction; there must exist other
evidence showing that a crime has in fact been committed.@  Rocha v. State, 16 S.W.3d 1, 4 (Tex.
Crim. App. 2000).  This other evidence need not be sufficient by itself to prove the
offense: Aall that is required is that there be
some evidence which renders the commission of the offense more probable than it
would be without the evidence.@  Williams v. State, 958 S.W.2d 186, 190
(Tex. Crim. App. 1997) (quoting Chambers v. State, 866 S.W.2d 9, 15B16 (Tex. Crim.
App. 1993), cert. denied, 511 U.S. 1100 (1994)).  The corpus delicti rule is satisfied if some
evidence exists outside of the confession which, considered alone or in
connection with the confession, shows that the crime actually occurred.  Salazar v. State, 86 S.W.3d 640, 645
(Tex. Crim. App. 2002).

Thus, where there is an extrajudicial statement, as exists
in this case, the corpus delicti rule requires us to consider all the record
evidence, other than the extrajudicial statement, in the light most favorable
to the verdict and to determine whether that evidence tends to establish that
someone committed an aggravated sexual assault against the victim.  Fisher v. State, 851 S.W.2d 298, 303
(Tex. Crim. App. 1993). 

C. 
Count 1 of the Indictment








As to Count 1, the State offered the eyewitness testimony
of Daniels=s girlfriend to corroborate the video
taped statement in which Daniels implicated himself in the commission of the
aggravated sexual assault against C.A. in December 2004.  Washington testified that she had babysat C.A.
for over a decade, that she was in fact babysitting her the night of December
24, 2004, and that she found Daniels on his knees over C.A. with his Apenis between her
butt cheeks.@ 

Daniels contends that the corpus delicti was not satisfied
because Washington=s testimony did
not establish that penetration occurred. 
However, Daniels=s admission  during the video taped interview that
penetration occurred Aby accident@ established that
fact.  To satisfy the corpus delicti of
aggravated sexual assault, the State needed only to produce some evidence that
the crime actually occurred.  See
Salazar, 86 S.W.3d at 645.  The corroborating eyewitness testimony of
Washington satisfied the corpus delicti of aggravated sexual assault.  See id. 
Moreover, considering all the record evidence, other than Daniels=s extrajudicial
statement, in the light most favorable to the verdict, it was rational for the
jury to find that the evidence tended to establish that an aggravated sexual
assault was committed against C.A. in December 2004.  See Fisher, 851 S.W.2d at 303. 








Therefore, we hold that because some corroborating
evidence was offered, Daniels=s confession was
sufficient evidence to support his conviction for the 2004 assault of C.A.  See id.  Accordingly, we overrule Daniels=s first point.

D. 
Counts 2 and 3 of the Indictment

As to Counts 2 and 3, the State again needed to produce
some evidence, other than the confession itself, that the alleged crimes had
occurred.  See Salazar, 86
S.W.3d at 645.  During the video
taped statement, Daniels responded to Detective Fox=s questioning
saying that there had been prior incidents involving C.A.  He said that when Washington lived on Seymour
Road, he used to stay over and he had once had sex with C.A., though C.A.
probably didn=t know what was going on.  Detective Fox confirmed Daniels=s statements by
asking if he had just had sex the one time and if it was from the front or
behind.  Daniels responded that it was
just the one time and that it was from behind. 
Detective Fox again asked Daniels if there were any other times.  Voluntarily, Daniels offered up, A[w]ell, yes.@  Daniels revealed that it started when C.A.
was Ayoung,@ it had to be Aseveral years ago@ because she was
now seventeen, and she was maybe ten to twelve years old at the time. He later
stated his sexual contact with C.A. started in the middle of 1994, which would
have made C.A. seven years old.  He
further said that it was off and on and that Washington knew about it and Ait upset her.@








Here, the State merely attempted to piggyback on the
corroboration of Count 1 to establish that Counts 2 and 3 were also
sufficiently corroborated.  The State
failed to offer any independent evidence corroborating Daniels=s statements that
incidents allegedly occurred in June 2002 and June 1995.  Thus, the only evidence offered by the State
to support commission of the alleged crimes was the extrajudicial statement
itself, in which Daniels implicated himself in two additional incidents of aggravated
sexual assault against C.A.  Daniels=s extrajudicial
confession was insufficient to support a conviction for these counts because it
was not corroborated.  See Gribble,
808 S.W.2d at 70.         The State argued
that Washington=s testimony, which was offered to
corroborate Daniels=s confession
regarding Count 1, established Daniels=s state of mind,
as well as a predatory relationship with the victim.  However, we simply cannot agree with the
State=s argument that Washington=s testimony, which
appropriately corroborated Daniels=s confession as to
Count 1, also corroborated his statements regarding the alleged incidents
charged in Counts 2 and 3.  Washington
testified that she had babysat C.A. off and on for over a decade and never had
any indication that Daniels did anything inappropriate with C.A. prior to
December 2004.  Furthermore, the State
did not offer any evidence which would make it more probable that Daniels
committed the alleged crimes.  See
Williams, 958 S.W.2d at 190.








The State is asking this Court to infer that Daniels had
access to C.A. in 2002 and 1995 because he had a relationship with Washington,
who babysat C.A.  Furthermore, the State
is asking this Court to find that this access serves as corroborating evidence.

In Kincaid v. State, the Court of Criminal Appeals
held that evidence that the accused and his niece lived alone together in the
same house for a year, that she gave birth to a child nine months after he
admitted to having sex with her, and that the niece had associated with no
other man than the accused was sufficient corroboration of the accused=s confession to
sustain a conviction for incest.  131
Tex. Crim. 101, 108B09, 97 S.W.2d 175,
178B79 (1936).  Here, we do not have any such evidence.  There is no forensic evidence or eyewitness
testimony that Daniels had, prior to December 2004, exclusive access to C.A.,
nor did C.A. become pregnant.         








In United
States v. Ybarra, 70 F.3d 362, 365B66 (5th Cir. 1995)[7], cert. denied, 517 U.S. 1174 (1996), the 5th
Circuit held that evidence that the defendant was merely seen at the house was
sufficient corroboration of his confession that he had control over a
firearm.  In that case, however, the
corroborating evidence sufficient to sustain the defendant=s conviction was the evidence that he lived at the house
with his wife, not that he was merely seen there.  Id.  Here no evidence
was offered here to establish that Daniels and Washington occupied the same
residence in 2002 or 1995.  In fact,
Washington testified that Daniels did not live with her when she lived on
Seymour Road, the alleged location of the 2002 assault. 

Additionally in Jackson
v. State, 652 S.W.2d 415, 419 (Tex. Crim. App. 1983), the court of
criminal appeals held that because the defendant had custody of the child at
the time the child suffered injuries this evidence was sufficient to
corroborate the defendant=s confession that she caused the injuries.  Id. 
It was insufficient, however, to satisfy the corpus delicti of the crime
of murder because the injuries were not proved to be the cause of death.  Id.  Thus, here the State needed to offer some
evidence, other than Daniels=s confession, that a crime or injury did in fact occur in
2002 and 1995.  The corpus delicti is not
satisfied merely because we know that Washington babysat C.A. off and on over a
ten-year period, during which defendant may or may not had the opportunity to
be around her.          








After reviewing the relevant case law, we have
found no authority standing for the proposition that the mere possibility that
a person had access to a complainant, without more, is corroborating
evidence.  As detailed above, the record
evidence, other than Daniels=s
extrajudicial statement, when considered in the light most favorable to the
verdict, does not tend to establish that any aggravated sexual
assault was committed against C.A. prior to December 2004.  See Fisher, 851 S.W.2d at 303.  Washington=s
testimony is the only Aattempt@ the
State has made at corroborating Counts 2 and 3, and we fail to see how it was
sufficient to corroborate Daniels=s
confession and satisfy the corpus delicti for alleged criminal conduct
committed in 2002 and 1995.  See
Fisher, 851 S.W.2d at 303.  

Therefore, although we hold that the eyewitness
testimony of Washington was sufficient to corroborate Daniels=s
confession as to the 2004 assault, we cannot hold that it corroborates Daniels=s
extrajudicial statement regarding alleged criminal conduct in 2002 and
1995.  Aside from Daniels=s
statement regarding two prior alleged incidents, no evidence at all was offered
to establish the corpus delicti of those incidents.  See Gribble, 808 S.W.2d at 70.  Accordingly, we sustain Daniels=s
second and third points. 

IV.  Jury
Instruction

In his fourth point, Daniels claims that the
trial court erred by denying his requested jury instruction.  We disagree.








Appellate review of an error in a jury charge
involves a two-step process.  Abdnor
v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether an error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id. at 731B
32.  








In this case, there was no error in the court=s
charge[8]
to the jury.  Daniels=s
requested instruction[9]
was a misstatement of the law, and it was properly denied by the trial
court.  Daniels=s
requested instruction would have required that the corpus delicti be
established by the corroborating evidence alone.  This is not the law.  Rather, if there is evidence corroborating
the extrajudicial statement, the extrajudicial statement can be used with the
other evidence to establish the corpus delicti. 
Fisher v. State, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993); see
also Farmer v. State, No. 02-06-00113-CR, 2006 WL 3844169, at *3 (Tex. App.CFort
Worth Dec. 28, 2006, pet. ref=d)
(mem. op.) (not designated for publication) (holding that appellant=s
extrajudicial admission that she had been operating a motor vehicle could be
used in establishing the corpus delicti of driving while intoxicated
because it was corroborated by sufficient evidence that she had been driving
the vehicle).  The corroborating evidence
need not be sufficient in itself to prove the offense charged.  Self, 513 S.W.2d at 835.  The evidence is sufficient if the
corroborating evidence joined with the extrajudicial statement permits a
rational finding of guilt beyond a reasonable doubt.  Folk v. State, 797 S.W.2d 141, 144
(Tex. App.CAustin 1990, pet. ref=d).

Therefore, we hold that Daniels=s
requested charge that the corroborating evidence prove beyond a reasonable
doubt that the crime was committed was an incorrect statement of the law.  Accordingly, we overrule Daniels=s
fourth point.

 

 

 

 








V. 
Amendment of the Indictment

In his fifth point, Daniels claims that the
trial court erred by granting the State=s
motion to amend the indictment[10]
because he was not given due notice.  We
disagree.

Although the record reflects that Daniels was
given only a half-hour notice of the motion to amend the indictment, it also
indicates that the indictment proceeded upon and the charge to the jury did not
include any theory of Acontact@ as to
Counts 1 and 2.  Thus, while Counts 1 and
2 were amended prior to trial to include Acontact,@ the
State clearly abandoned the amendments prior to trial, making the point
moot.  See Shannon v. State, 681
S.W.2d 142, 147 (Tex. App.CHouston
[14th Dist.] 1984) (holding that appellant=s
ground of error alleging that the trial court erred in failing to quash a
three-count indictment as duplicitous was moot because State abandoned two counts of the
original indictment and proceeded to trial on only one
count of aggravated robbery), pet. ref=d, 693
S.W.2d 390 (Tex. Crim. App. 1985).  A
moot point should be overruled.  See
Rocha, 16 S.W.3d at 10.








Therefore, even if we were to agree that a
half-hour=s notice of the State=s
motion to amend the indictment was insufficient, we hold that the point is moot
on appeal because the State abandoned the amendment prior to trial.  Clearly, Daniels=s
ability to prepare a defense was in no way inhibited because the State
abandoned the amendments to the indictment prior to trial.  See Flowers v. State, 815 S.W.2d 724,
727 (Tex. Crim. App. 1991).  Accordingly,
we overrule Daniels=s fifth point.

VI. 
Conclusion

Having overruled points one, four, and five, we
affirm Daniels=s conviction as to Count 1 for
aggravated sexual assault.  Having
sustained points two and three, we reverse Daniels=s convictions
as to Counts 2 and 3 and render a judgment of acquittal as to those counts.  See Tex. R. App. P. 43.2(c), 51.2(d); Greene
v. Massey, 437 U.S. 19, 24B25, 98 S. Ct. 2151, 2154B55 (1978); Burks v. United States, 437 U.S. 1, 16B18, 98 S. Ct. 2141, 2150B51 (1978).                                                       PER CURIAM

 

PANEL F:    MCCOY,
LIVINGSTON, and DAUPHINOT, JJ.

 

DO NOT PUBLISH

Tex. R. App.
P. 47.2(b)

 

DELIVERED: August 31, 2007











[1]See Tex. R. App. P. 47.4.





[2]At
the time of the alleged offense, C.A. was seventeen years old and still
suffering from severe mental retardation. 
C.A. has the mental capacity of a two-year-old child.  Though there was a considerable amount of
testimony given at trial establishing her disability, it is not in dispute on
appeal, and will not be further discussed.





[3]It is
undisputed that C.A., suffering from severe mental retardation and being
nonverbal, was incapable of giving consent.





[4]Count
3 originally included the phrase Aand contact@
because the theory of Acontact@
under the aggravated sexual assault statute is applicable if the victim is a
child.  See Tex. Penal Code Ann. '
22.021(a)(1)(B) (Vernon Supp. 2006).





[5]The
State abandoned, prior to trial, the allegation in Count 3 that the victim was
disabled, pursuing instead that the alleged violation of the statute was
committed on C.A. when she was a child.





[6]The
trial court sentenced Daniels to twenty-three years=
confinement for each of the three counts, with the sentences to be served
concurrently.





[7]We note this authority is merely persuasive.  See Jeffery v. State, 169
S.W.3d 439, 443 n.1 (Tex. App.CTexarkana
2005, pet. ref=d) (opinions from any federal or state
court may be relied on as persuasive authority).





[8]The trial court gave the following
jury instruction regarding the corpus delicti: AYou are instructed that a defendant
cannot be convicted based on a confession standing alone, but there must be
some evidence presented that corroborates the defendant=s confession and tends to support
the content of the confession.@  The
second part of the charge, which was not at issue, read: AIf
you find that the [d]efendant made a confession but you also find that the
confession is not corroborated by other evidence then you will wholly disregard
the confession.@





[9]Daniels
requested the following instruction: AYou are instructed that a
[d]efendant cannot be convicted based on a confession standing alone, but there
must be other evidence presented that corroborates the [d]efendant=s
confession and proves beyond a reasonable doubt that the crime was
committed.@
[Emphasis added.]





[10]Counts
1 and 2 of the indictment were amended to add the phrase Aor
contact.@  However, the State abandoned the theory of Acontact@
prior to trial. Most likely, the State abandoned the amendments because Acontact@ is
applicable under the aggravated sexual assault statute if the victim is a
child, but not if the victim is a disabled person.  See Tex.
Penal Code Ann. '
22.021(a)(1)(B).