COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-258-CR

RICHARD EARL DANIELS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1) ON REHEARING

------------

I.  Introduction

After considering our prior opinion on the State’s motion for rehearing, we deny the motion.  We withdraw our July 26, 2007 opinion and judgment and substitute the following.

In five points, Appellant Richard Earl Daniels appeals his conviction of and twenty-three-year sentence for aggravated sexual assault.  Overruling points one, four, and five, and sustaining points two and three, we affirm in part and reverse and render in part.

II.  Factual and Procedural Background

Daniels and his girlfriend, Sherry Washington, moved from Waco to Wichita Falls in late 1993 or early 1994.  After getting settled in, Washington began babysitting C.A., a then seven-year-old girl with severe mental retardation.
(footnote: 2)  For the next decade, Washington continued, off and on, to babysit C.A.  

On Christmas Eve 2004, Washington babysat C.A. at the house that she shared with Daniels.  Washington testified that C.A. was asleep on the floor in the spare upstairs bedroom when she and Daniels went to bed just before midnight.  Washington further testified that in the early hours of Christmas morning, she was awakened by C.A.’s laughter.  Noticing that Daniels was not still in bed with her, Washington got up and went to C.A.’s room.  Turning on the light in the hallway, Washington found Daniels in C.A.’s room kneeling over C.A. with his “penis between her butt cheeks.”  C.A.’s pull-up diaper was pulled down halfway to her knees. 

Washington did not call the police.  A few days after Christmas, however, she mentioned the incident to some ladies at her church.  Washington testified at trial that she told “Sister Jessica” that she had caught Daniels having sex with C.A.  After the ladies at the church conferred with the pastor, they phoned police, who thereafter contacted Washington. 

Washington told Officer Ronnie Sheehan of the Wichita Falls Police Department that she had seen Daniels having sex with C.A.  She had caught Daniels on top of C.A. with his underwear down and his “penis between her butt cheeks.”  Officer Sheehan testified that Washington reported to him that Daniels had apologized to her and said he would work everything out.  Daniels was arrested and booked by Deputy Darryl Waddelton.  Deputy Waddelton testified that during the book-in process, Daniels made the following statement: “that he had had sex with a girl and that he had apologized to his girlfriend about it.” 

C.A. was not medically examined until nearly a month after the alleged assault.  No evidence of sexual assault was observed by Dr. Leo Mercer upon his review of the photo images obtained during the examination of C.A.  However, as Dr. Mercer testified at trial, it is “not unusual if you have opportunity to do an exam one month after an alleged event to have an exam that doesn’t show the elements of an acute injury.”

At trial, the State introduced into evidence a video taped interview of Daniels speaking with Detective Tony Fox.  On the tape, Daniels told Detective Fox that on December 24, 2004, C.A. spent the night at the house that he shared with his girlfriend.  He told Detective Fox that while Washington was asleep in their room, he got up and went to the room in which C.A. was sleeping.  Daniels stated on the tape that C.A. wore pull-ups, 
and that he had pulled them down 
and was rubbing his penis on her “butt cheeks.”  Daniels repeatedly claimed that there was no penetration, but later admitted that there was penetration by accident.  When Washington caught Daniels kneeling over C.A.
,
 he got up and told his girlfriend that he was sorry.  
Daniels was charged with one count of aggravated sexual assault, i.e., that he did “unlawfully, intentionally[,] and knowingly cause the penetration or contact of the anus and female sexual organ of [C.A.
,] a person who was then and there a disabled individual, by [his] sexual organ, without [her] consent
.”
(footnote: 3) 

Daniels also made statements on the tape in which he implicated himself in two prior assaults on C.A. alleged to have occurred in June 2002 and June 1995.  Counts 2 and 3 of the indictment address those acts.  Count 2, much like Count 1 above, was for aggravated sexual assault of a disabled individual.
  Count 3, however, for the alleged 1995 assault, charged that Daniels did “unlawfully, intentionally, and knowingly cause the [contact
(footnote: 4)] and penetrate the anus and [female] sexual organ of [C.A.] and [C.A.] was a child younger than 14 years of age[,] and a person who was then and there a disabled individual
.”
(footnote: 5) 

At the conclusion of the State’s case, Daniels moved for an instructed verdict of acquittal as to all three counts of aggravated sexual assault.  The trial court overruled the motion.  The jury subsequently convicted Daniels of all three counts of aggravated sexual assault and assessed his punishment at twenty-three years’ confinement
.
(footnote: 6)  Daniels brings five points on appeal.

III.  Legal Sufficiency

In his first three points, Daniels claims that the trial court erred by overruling his motion for an instructed verdict of not guilty as to all three counts of the indictment.  In sum, Daniels argues that the evidence presented in this case is legally insufficient to support the verdict because the State failed to offer any independent evidence of the corpus delicti for the offenses alleged to have been committed in December 2004, June 2002, and June 1995.  We disagree as to point one regarding Count 1, and agree as to points two and three regarding Counts 2 and 3, respectively. 

A.  Standard of Review

An appeal from the denial of a motion for an instructed verdict is the same as a challenge to the legal sufficiency of the evidence to support the conviction
.  
Dunn v. State
, 951 S.W.2d 478, 480 (Tex. Crim. App. 1997).  In 
reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Hampton v. State
, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the verdict.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

B. Applicable Law

An extrajudicial confession by the accused is insufficient to support a conviction unless corroborated.  
Gribble v. State
, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990), 
cert. denied
, 501 U.S. 1232 (1991).  The corpus delicti rule is a rule of evidentiary sufficiency that can be summarized as follows: “an extrajudicial confession of wrongdoing, standing alone, is not enough to support a conviction; there must exist other evidence showing that a crime has in fact been committed.”  
Rocha v. State
, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000).  
This other evidence need not be sufficient by itself to prove the offense: “all that is required is that there be some evidence which renders the commission of the offense more probable than it would be without the evidence.”  
Williams v. State, 
958 S.W.2d 186, 190 (Tex. Crim. App. 1997) (quoting 
Chambers v. State
, 866 S.W.2d 9, 15
–
16 (Tex. Crim. App. 1993), 
cert. denied
, 511 U.S. 1100 (1994)).  The corpus delicti rule is satisfied if some evidence exists outside of the confession which, considered alone or in connection with the confession, shows that the crime actually occurred.  
Salazar v. State
, 86 S.W.3d 640, 645 (Tex. Crim. App. 2002).

Thus, where there is an extrajudicial statement, as exists in this case, the corpus delicti rule requires us to consider all the record evidence, other than the extrajudicial statement, in the light most favorable to the verdict and to determine whether that evidence tends to establish that someone committed an aggravated sexual assault against the victim.  
Fisher v. State
, 851 S.W.2d 298, 303 (Tex. Crim. App. 1993). 

C.  Count 1
 
of the Indictment

As to Count 1, the State offered the eyewitness testimony of Daniels’s girlfriend to corroborate the video taped statement in which Daniels implicated himself in the commission of the aggravated sexual assault against C.A. in December 2004.  Washington testified that she had babysat C.A. for over a decade, that she was in fact babysitting her the night of December 24, 2004, and that she found Daniels on his knees over C.A. with his “penis between her butt cheeks.” 

Daniels contends that the corpus delicti was not satisfied because Washington’s testimony did not establish that penetration occurred.  However, Daniels’s admission  during the video taped interview 
that penetration occurred “by accident” established that fact
.
  To satisfy the corpus delicti of aggravated sexual assault, the State needed only to produce some evidence that the crime actually occurred.
 
 
See Salazar
, 86 S.W.3d at 645.
 
 The corroborating eyewitness testimony of Washington satisfied the corpus delicti of aggravated sexual assault.  
See id.  
Moreover, considering all the record evidence, other than Daniels’s extrajudicial statement, in the light most favorable to the verdict, it was rational for the jury to find that the evidence tended to establish that an aggravated sexual assault was committed against C.A. in December 2004. 
 See Fisher,
 851 S.W.2d at 303. 

Therefore, we hold that because some corroborating evidence was offered, Daniels’s confession was sufficient evidence to support his conviction for the 2004 assault of C.A. 
 See id. 
 Accordingly, we overrule Daniels’s first point.

D.  Counts 2 and 3 of the Indictment

As to Counts 2 and 3, the State again 
needed 
to produce some evidence, other than the confession itself, that the alleged crimes had occurred.
 
 
See Salazar
, 86 S.W.3d at 645.
 
 During the video taped statement, Daniels responded to Detective Fox’s questioning saying that there had been prior incidents involving C.A.  He said that when Washington lived on Seymour Road
, he used to stay over and he had once had sex with C.A., though C.A. probably didn’t know what was going on.  Detective Fox confirmed Daniels’s statements by asking if he had just had sex the one time and if it was from the front or behind.  Daniels responded that it was just the one time and that it was from behind.  Detective Fox again asked Daniels if there were any other times.  Voluntarily, Daniels offered up, “[w]ell, yes.”  Daniels revealed that it started when C.A. was “young,” it had to be “several years ago” because she was now seventeen, and she was maybe ten to twelve years old at the time. He later stated his sexual contact with C.A. started in the middle of 1994, which would have made C.A. seven years old.  He further said that it was off and on and that 
Washington knew about it and “it upset her.”

Here, the State merely attempted to piggyback on the corroboration of Count 1 to establish that Counts 2 and 3 were also sufficiently corroborated.  T
he State 
failed to offer any independent evidence corroborating 
Daniels’s statements that incidents allegedly occurred in June 2002 and June 1995.  Thus, the only evidence offered by the State to support commission of the alleged crimes was the extrajudicial statement itself, in which Daniels implicated himself in two additional incidents of aggravated sexual assault against C.A.  Daniels’s extrajudicial confession was insufficient to support a conviction for these counts because it was not corroborated.  
See Gribble
, 808 S.W.2d at 70. 
 The State argued that Washington’s testimony, which was offered to corroborate Daniels’s confession regarding Count 1, established Daniels’s state of mind, as well as a predatory relationship with the victim.  However, we simply cannot agree with the State’s argument that Washington’s testimony, which appropriately corroborated Daniels’s confession as to Count 1, also corroborated his statements regarding the alleged incidents charged in Counts 2 and 3.  
Washington testified that she had babysat C.A. off and on for over a decade and never had any indication that Daniels did anything inappropriate with C.A. prior to December 2004.  Furthermore, the State did not offer any evidence 
which would make it more probable that Daniels committed the alleged crimes.  
See Williams
, 958 S.W.2d at 190.

The State is asking this Court to infer that Daniels had access
 to C.A. in 2002 and 1995 because he had a relationship with Washington, who babysat C.A.
  Furthermore, the State is asking this Court to find that this access
 serves as corroborating evidence.

In 
Kincaid v. State
, the Court of Criminal Appeals held that evidence that the accused and his niece lived alone together in the same house for a year, that she gave birth to a child nine months after he admitted to having sex with her, and that the niece had associated with no other man than the accused was 
sufficient corroboration of the accused’s confession to sustain a conviction for incest.  
131 Tex. Crim. 101, 108–09, 97 S.W.2d 175, 178–79 (1936
).  
Here, we do not have any such evidence.  
There is no forensic evidence or eyewitness testimony that Daniels had, prior to December 2004, exclusive access to C.A., nor did C.A. become pregnant. 

In 
United States v. Ybarra
, 70 F.3d 362, 365–66 (5th Cir. 1995)
(footnote: 7), 
cert. denied
, 517 U.S. 1174 (1996), the 5th Circuit held that evidence that the defendant was merely seen at the house was sufficient corroboration of his confession that he had control over a firearm.  In that case, however, the corroborating evidence sufficient to sustain the defendant’s conviction was the evidence that he lived at the house with his wife, not that he was merely seen there.  
Id.
 
 Here no 
evidence was offered here to establish that Daniels and Washington occupied the same residence in 2002 or 1995.  In fact, Washington testified that Daniels did not live with her when she lived on Seymour Road, the alleged location of the 2002 assault. 

Additionally in
 
Jackson v. State
, 652 S.W.2d 415, 419 (Tex. Crim. App. 1983)
, 
the court of criminal appeals held that because the defendant had custody of the child at the time the child suffered injuries this evidence was sufficient to corroborate the defendant’s confession that she caused the injuries.  
Id.
  It was insufficient, however, to satisfy the corpus delicti of the crime of murder because the injuries were not proved to be the cause of death.  
Id. 
 Thus, here the State needed to offer some evidence, other than Daniels’s confession, that a crime or injury did in fact occur in 2002 and 1995.  The corpus delicti is not satisfied merely because we know that Washington babysat C.A. off and on over a ten-year period, during which defendant may or may not had the opportunity to be around her.
 

After reviewing the relevant case law, we have found no authority standing for the proposition that the mere possibility that a person had access to a complainant, without more, is corroborating evidence.
  As detailed above, the record evidence, other than Daniels’s extrajudicial statement, when considered in the light most favorable to the verdict, does not tend to establish that any aggravated sexual assault was committed against C.A. prior to December 2004.  
See Fisher,
 851 S.W.2d at 303.  
Washington’s testimony is the only “attempt” the State has made at corroborating Counts 2 and 3, and w
e fail to see how it was sufficient to corroborate Daniels’s confession and satisfy the corpus delicti for alleged criminal conduct committed in 2002 and 1995.  
See Fisher,
 851 S.W.2d at 303. 

Therefore, although we hold that the eyewitness testimony of Washington was sufficient to corroborate Daniels’s confession as to the 2004 assault, we cannot hold that it corroborates Daniels’s extrajudicial statement regarding alleged criminal conduct in 2002 and 1995.  Aside from Daniels’s statement regarding two prior alleged incidents, no evidence at all was offered to establish the corpus delicti of those incidents. 
 
See Gribble
, 808 S.W.2d at 70.  Accordingly, we sustain Daniels’s second and third points. 

IV.  Jury Instruction

In his fourth point, Daniels claims that the trial court erred by denying his requested jury instruction.  We disagree.

Appellate review of an error in a jury charge involves a two-step process.  
Abdnor v. State
, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether an error occurred.  If so, we must then evaluate whether sufficient harm resulted from the error to require reversal.  
Id.
 at 731– 32.  

In this case, there was no error in the court’s charge
(footnote: 8) to the jury.  Daniels’s requested instruction
(footnote: 9) was a misstatement of the law, and it was properly denied by the trial court.  Daniels’s requested instruction would have required that the corpus delicti be established by the corroborating evidence alone.  This is not the law.  Rather, if there is evidence corroborating the extrajudicial statement, the extrajudicial statement can be used with the other evidence to establish the corpus delicti.  
Fisher v. State
, 851 S.W.2d 298, 302 (Tex. Crim. App. 1993); 
see also Farmer v. State
, No. 02-06-00113-CR, 2006 WL 3844169, at *3 (Tex. App.—Fort Worth Dec. 28, 2006, pet. ref’d) (mem. op.) (not designated for publication) 
(holding that appellant’s extrajudicial admission that she had been operating a motor vehicle could be used in establishing the
 
corpus delicti of driving while intoxicated because it was corroborated by sufficient evidence that she had been driving the vehicle).  
The corroborating evidence need not be sufficient in itself to prove the offense charged.  
Self
, 513 S.W.2d at 835.  The evidence is sufficient if the corroborating evidence joined with the extrajudicial statement permits a rational finding of guilt beyond a reasonable doubt.  
Folk v. State
, 797 S.W.2d 141, 144 (Tex. App.—Austin 1990, pet. ref’d).

Therefore, we hold that Daniels’s requested charge that the corroborating evidence prove beyond a reasonable doubt that the crime was committed was an incorrect statement of the law.  Accordingly, we overrule Daniels’s fourth point.

V.  Amendment of the Indictment

In his fifth point, Daniels claims that the trial court erred by granting the State’s motion to amend the indictment
(footnote: 10) because he was not given due notice
.  We disagree.

Although the record reflects that Daniels was given only a half-hour notice of the motion to amend the indictment, it also indicates that the indictment proceeded upon and the charge to the jury did not include any theory of “contact” as to Counts 1 and 2.  Thus, while Counts 1 and 2 were amended prior to trial to include “contact,” the State clearly abandoned the amendments prior to trial, making the point moot.  
See Shannon v. State
, 681 S.W.2d 142, 147 (Tex. App.—Houston [14th Dist.] 1984) (holding that appellant’s ground of error alleging that the trial court erred in failing to quash a three-count indictment as duplicitous
 was moot because State abandoned two counts of the original indictment and proceeded to trial on only one count of aggravated robbery)
, 
pet. ref’d
, 693 S.W.2d 390 (Tex. Crim. App. 1985)
.
  A moot point should be overruled.  
See Rocha
, 16 S.W.3d at 10.

Therefore, even if we were to agree that a half-hour’s notice of the State’s motion to amend the indictment was insufficient, we hold that the point is moot on appeal because the State abandoned the amendment prior to trial.  Clearly, Daniels’s ability to prepare a defense
 was in no way inhibited because
 the State abandoned the amendments to the indictment prior to trial.  
See 
Flowers v. State
, 815 S.W.2d 724, 727 (Tex. Crim. App. 1991).
  Accordingly, 
we overrule
 Daniels’s fifth point.

VI.  Conclusion

Having overruled points one, four, and five, we affirm Daniels’s 
conviction as to Count 1 for aggravated sexual assault.
  Having 
sustained points two and three, 
we reverse 
Daniels’s convictions as to Counts 2 and 3 and render a judgment of acquittal as to those counts.
 
 See
 
Tex. R. App. P.
 43.2(c), 51.2(d); 
Greene v. Massey
, 437 U.S. 19, 24
–
25, 98 S. Ct. 2151, 2154
–
55 (1978); 
Burks v. United States
, 437 U.S. 1, 16
–
18, 98 S. Ct. 2141, 2150
–
51 (1978)
.  
 PER CURIAM

PANEL F: MCCOY, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: August 31, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
At the time of the alleged offense, C.A. was seventeen years old and still suffering from severe mental retardation.  C.A. has the mental capacity of a two-year-old child.  Though there was a considerable amount of testimony given at trial establishing her disability, it is not in dispute on appeal, and will not be further discussed.

3:
It is undisputed that C.A., suffering from severe mental retardation and being nonverbal, was incapable of giving consent.

4:
Count 3 originally included the phrase “and contact” because the theory of “contact” under the aggravated sexual assault statute is applicable if the victim is a child.  
See 
Tex. Penal Code Ann.
 § 22.021(a)(1)(B) (Vernon Supp. 2006).

5:
The State abandoned, prior to trial, the allegation in Count 3 that the victim was disabled, pursuing instead that the alleged violation of the statute was committed on C.A. when she was a child.

6:
The trial court sentenced Daniels to twenty-three years’ confinement for each of the three counts, with the sentences to be served concurrently.

7:
We note this authority is merely persuasive.  
See 
Jeffery v. State
,
 169 S.W.3d 439, 443 n.1 (Tex. App.
—
Texarkana 2005, pet. ref’d)
 (opinions from any federal or state court may be relied on as persuasive authority).

8:
The trial court gave the following jury instruction regarding the corpus delicti: “You are instructed that a defendant cannot be convicted based on a confession standing alone, but there must be some evidence presented that corroborates the defendant’s confession and tends to support the content of the confession.”  
The second part of the charge, which was not at issue, read: “If you find that the [d]efendant made a confession but you also find that the confession is not corroborated by other evidence then you will wholly disregard the confession.”

9:
Daniels requested the following instruction: “You are instructed that a [d]efendant cannot be convicted based on a confession standing alone, but there must be other evidence presented that corroborates the [d]efendant’s confession 
and proves beyond a reasonable doubt that the crime was committed.
” [Emphasis added.]

10:
Counts 1 and 2 of the indictment were amended to add the phrase “or contact.”  However, the State abandoned the theory of “contact” prior to trial. Most likely, the State abandoned the amendments because “contact” is applicable under the aggravated sexual assault statute if the victim is a child, but not if the victim is a disabled person.  
See 
Tex. Penal Code Ann.
 § 22.021(a)(1)(B).