Albert SALAZAR, Appellant,

v.

The STATE of Texas.

No. 0045–01.

Court of Criminal Appeals of Texas.

Oct. 9, 2002.

Thomas F. Greenwell, Corpus Christi, for Appellant.

James D. Rosenkild, Asst. DA, Corpus Christi, Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court, joined by KELLER, P.J., MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, and HOLCOMB, JJ.

Appellant Albert Salazar was found guilty of five counts of molesting the younger brother and sister of a teenager to whom he gave music lessons. The court of appeals reversed one of the counts—that of aggravated sexual assault of the little boy—because it found that the only evidence of the assault was Mr. Salazar's extrajudicial confession, which he repudiated at trial.[1] This, the court of appeals held, rendered the evidence insufficient under the *corpus delicti* rule which requires that an out-of-court confession be corroborated by some evidence that the offense actually was committed.[2] We granted review to consider the court's application of that rule.[3] Because we find that the *corpus delicti* rule was indeed satisfied in this case, we reverse the court

---

1. *Salazar v. State*, 31 S.W.3d 726, 730 (Tex.App.Corpus Christi 2000).

2. *Id.*

3. We granted review on the following questions:

   1) Is a defendant's judicial confession that he committed the same offense for which he was indicted, albeit in a different manner than alleged in the indictment, sufficient for purposes of the *"corpus delicti* rule" to corroborate his extrajudicial confession upon which the allegations in the indictment were based?

   2) Is Appellant's judicial confession that he placed a child's penis "on" his mouth sufficient for purposes of the *"corpus delicti* rule" to corroborate his extrajudicial confession that he placed the child's penis 'in' his mouth?

   3) Is Appellant's judicial confession that he placed a child's penis "on" his mouth, combined with his extrajudicial confession that he placed the child's penis "in" his mouth, the child's outcry that Appellant kissed his private parts, and other evidence at trial, sufficient to support a conviction for aggravated sexual assault by causing the child's penis to penetrate Appellant's mouth?

of appeal's decision, and reinstate the full judgment and sentence of the jury.

## I.

Appellant, although a high school dropout, remained involved in school band. He volunteered with a middle school band and gave private music lessons to its members. In this capacity he met Joshua, the older brother of the two victims in this case. Appellant started giving Joshua saxophone lessons in 1997. Every Sunday appellant would come to Joshua's apartment for the lessons. Joshua lived with his grandmother, his little brother Julian, and his little sister Alexandria (Alex). Alex and Julian were home alone one afternoon during the summer of 1998, while Joshua was out of town and their grandmother was at work. Though the music lessons were on hold for the summer, appellant, then age eighteen, came to the apartment. Finding the two children alone, appellant sexually molested both of them. Julian was only six years old at the time; Alex was seven. When confronted by police, appellant gave a written statement admitting that he had sexually abused both children.[4]

Appellant was indicted on five counts: one count of attempted aggravated sexual assault, two counts of aggravated sexual assault, and two counts of indecency with a child. Appellant pled guilty to all but two of the five charges.[5] He pleaded "not guilty" to the attempted aggravated assault of Julian (by pulling down Julian's underwear or by rubbing his penis on Julian's buttock intending to cause his penis to contact or penetrate Julian's anus) and the aggravated sexual assault of Julian (by causing Julian's penis to penetrate his mouth). Appellant denied the attempted aggravated sexual assault charge against Julian and testified that, although he rubbed his penis on Julian's behind, he did not have any intent for his penis to touch Julian's anus. Appellant denied the aggravated assault charge and testified that, although he put Julian's penis *on* his mouth, he did not put Julian's penis *in* his mouth.[6] When asked why he had confessed in writing to putting Julian's penis *in* his mouth, appellant said he simply mis-

---

**4.** That statement was admitted at trial. It read, in pertinent part:

> One morning I woke up and I took some acid. I got some [music] papers and went to my car and drove to Joshua's apartment. When I got there, I knocked on the door but nobody answered. When I was going to leave, I heard the door knob jiggle. Joshua's little sister answered the door. I asked for Joshua and his grandmother, and she told me that they were not home. I then went inside and I took Joshua's little sister to the bedroom. I then took her pants and panties down and I touched her vagina. I then kissed her vagina. After I did that, I got Joshua's little brother and took him into the bedroom. I pulled his pants and underwear down and I touched his penis. After I touched his penis, I put his penis in my mouth. I then laid him on his stomach and put my penis on his butt and rubbed up and down. I then realized that I was doing something wrong. I wrote a note to their

> grandmother that I had been there and left it on the table. I told them not to tell anybody about what I had done, because they would get sick if they did. I then left the apartment. A week or so later, I called Joshua's grandmother and told her that I would not be able to teach Joshua anymore because I was moving away.

**5.** At the beginning of the trial, appellant pleaded guilty to both counts of indecency and to the aggravated sexual assault of Alex.

**6.** Regardless of whether a person puts his mouth *on* a child's sexual organ or puts the child's sexual organ *in* his mouth, that intentional or knowing conduct constitutes the crime of aggravated sexual assault. Tex. Penal Code 22.021(a)(1)(B)(iii) (a person commits an offense if the person intentionally or knowingly "causes the sexual organ of a child to *contact* or *penetrate* the mouth ... of another person")(emphasis added).

read the confession before he signed it. The jury evidently rejected appellant's trial testimony and found him guilty on both counts.

On appeal, appellant argued that the evidence was legally insufficient to support the aggravated sexual assault count. Appellant contended that, although there was corroboration of the commission of the crime of aggravated sexual assault, there was no independent corroboration of the specific manner and means of committing that offense. That is, the State did not independently corroborate every jot and tittle of the specific manner in which he committed the offense as outlined in his written confession.

■ The court of appeals agreed and held that there was no independent evidence that appellant put Julian's penis *in* his mouth, because at trial appellant testified that he only put Julian's penis *on* his mouth. Julian's outcry statement to his grandmother was that appellant "kissed" Julian's penis, but at trial, Julian himself denied any oral sexual contact at all.[7] The court of appeals held that "[t]he jury received no evidence of the crime other than the out of court confession which appellant denies."[8] Implicit in this holding is the notion that the *corpus delicti* rule is not satisfied unless the State presents evidence to corroborate every element and descriptive allegation in the indictment. The State argues that the court of appeals

---

**7.** It is apparent from Julian's trial testimony that he was reticent to discuss any sexual conduct. He testified, in part:

Q: What did [appellant] do? Did he touch you somewhere?
A: Yeah, yeah, he did.
Q: Okay. Tell us about that. Where did he touch you?
A: Oh, do I have to?
Q: Yeah.
A: Oh.
Q: Remember, we talked about you just have to tell me what happened one time. We talked about this before, right?
A: He—he got on top of me.
. . .
Q: Okay. And then what did he do; did he touch you somewhere?
A: He just touched my back. That's it.
Q: Okay. What else did he do?
A: Uh, that's it.
Q: Okay. Well, you told us about he got on top of you.
A: Yeah, yeah.
Q: What did he do while he was on top of you?
A: That's it. He just got off and he, and, and, and, and, and, and, and, and, and, and and . . .
Q: Do you remember telling me that he put his penis on you?
A: Yeah, yeah, yeah.
Q: Did he do that?
A: Yeah, yeah, yeah.

. . .
Q: Okay. Did he touch your butt with his penis?
A: Nah, that's not.
Q: No?
A: Uh, no, no, no, no.
Q: Do you remember telling us before that he did?
A: He did?
Q: Yeah.
A: Oh, yeah, yeah, yeah, yeah. I forgot it, okay? Am I done?
Q: Not yet.
A: Oh.
Q: Not yet. I need to ask you something else. So—
A: Okay. Okay. I'll be calm.
. . .
Q: Okay. Now, what about—what about your private part?
A: Oh, mine?
Q: Did he touch your private part, too?
A: Nah, that's not true.
Q: Okay. He didn't do that?
A: No, no, no.
Q: Okay.
A: That's a no-no. That's a no-no.
Q: What about with his mouth; did he put his mouth on your private part?
A: No way. That's sick.
Q: No? Do you remember telling us before that he did?
A: Um-um, um-um, he didn't do that.

**8.** *Salazar*, 31 S.W.3d at 730.

misapprehends the *corpus delicti* rule. Rather than requiring independent corroboration of each element and descriptive allegation, the rule requires that there be some independent evidence tending to show the essential nature of the charged crime. We agree.

## II.

■ The historical rationale for the common law *corpus delicti* corroboration rule is explained by Professors Perkins and Boyce.[9] The *corpus delicti* rule guarded against the shocking spectacle and deleterious effect upon the criminal justice system when a murder victim suddenly reappeared, hale and hearty, after his self-confessed murderer had been tried and executed.[10] Although such cases were far and few between,[11] they demonstrated that the old adage, "he wouldn't have confessed unless he were guilty," is not inevitably true. "The rule requiring corroboration of confessions protects the administration of the criminal law against errors in convictions based upon untrue confessions alone."[12] Over time, the *corpus delicti* rule expanded to cover crimes other than murder.

■ Wigmore explains the American concept of the *corpus delicti* rule thus:

[Every crime] reveals three component parts, *first*, the *occurrence* of the specific kind of injury or loss (as in homicide, a person deceased; in arson, a house burnt; in larceny, property missing); *secondly*, somebody's criminality (in contrast, e.g., to accident) as the source of the loss,—these two together involving the commission of a crime by *somebody*; and *thirdly*, the accused's *identity* as the doer of this crime.[13]

In most American jurisdictions, including Texas, the *corpus delicti* rule requires some corroboration of the first two elements—an injury or loss and a criminal agent—although it does not also require any independent evidence that the defendant was the criminal culprit.[14] Its purpose is to ensure that a person is not convicted of a crime that never occurred, based solely upon that person's extra-judicial confession.[15] The rule was not intended, however, to ensure that all confessions are corroborated in specific details or to ensure that the suspect does not falsely confess to a crime that did occur but for

---

9. ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 142–150 (3d ed.1982).

10. *Id.* at 142 (describing one such case from seventeenth century).

11. *See, e.g., Perry's case,* 14 How. St. Tr. 1312 (1661); *The Trial of Stephen and Jesse Boorn,* 6 Am. St. Tr. 73 (1819).

12. *Warszower v. United States,* 312 U.S. 342, 347, 61 S.Ct. 603, 85 L.Ed. 876 (1941).

13. 7 John Wigmore, Evidence § 2072 (Chadbourne rev.1978).

14. *See Watson v. State,* 154 Tex.Crim. 438, 443, 227 S.W.2d 559, 562 (1950) (" 'Corpus delicti' as used in this connection means proof of the fact that the crime charged has been committed by someone"); *Fisher v. State,* 851 S.W.2d 298, 303 (Tex.Crim.App. 1993) ("The corpus delicti of a crime—any crime—simply consists of the fact that the crime in question has been committed by someone"); *Gribble v. State,* 808 S.W.2d 65, 70 (Tex.Crim.App.1990)(plurality opinion)("the extrajudicial confession of a criminal defendant must be corroborated by other evidence tending to show that a crime was committed").

15. *See Duncan v. State,* 109 Tex.Crim. 668, 670, 7 S.W.2d 79, 80 (1928)("All the state has in this case independent of the alleged confession of appellant is that a fire occurred. The circumstances attending it are just as consistent with the absence of a crime as with the perpetration of one. Proof that a fire occurred of itself obviously does not prove that the crime of arson has been committed by someone").

which he had no culpability.[16] Thus, it satisfies the *corpus delicti* rule if some evidence exists outside of the extra-judicial confession which, considered alone or in connection with the confession, shows that the crime actually occurred.[17]

### III.

■ The issue in this case, then, is whether there was any independent evidence which, considered with the confession, proved that someone committed the crime of aggravated sexual assault upon the six-year-old boy. There was ample evidence of the crime, including:

1. Julian's grandmother's testimony, that Julian told her that appellant had kissed him "down there" and "on his private parts";

2. Alex's testimony, that appellant asked Julian if what he was doing "felt good"; and

3. Appellant's in-court confession that he put Julian's penis *on* his mouth.[18]

This evidence fulfills the purpose of the *corpus delicti* rule. It assures that the very crime to which appellant confessed, and for which he was prosecuted, actually happened.[19] The fact that appellant testified that he put Julian's penis *on* his mouth rather than putting the child's private part *in* his mouth is irrelevant for purposes of the *corpus delicti* rule. The *corpus delicti* rule is satisfied by the State producing some independent evidence that someone had sexual contact with Julian's private part and that the act was performed with criminal intent.[20]

It is this independent evidence which distinguishes the present case from *Smith v. State*,[21] the case on which the court of appeals relied. In *Smith*, this Court overturned a statutory rape conviction—despite the defendant's extrajudicial confession—because at trial, both the defendant and the victim denied that the sexual act occurred.[22] In *Smith*, there was no other

---

**16.** Various constitutional rules and state statutes concerning the voluntariness of a confession guard against the unpalatable spectacle of an innocent person falsely confessing to a known crime he did *not* commit, through official coercion, mental delusion, or other fabrication. *See Self v. State*, 513 S.W.2d 832, 836–37 (Tex.Crim.App.1974); *see generally* George Dix & Robert Dawson, Criminal Practice and Procedure § 31.332, at 212 (2d ed.2001).

**17.** *Watson*, 154 Tex.Crim. at 443, 227 S.W.2d at 562; *see also* Dix & Dawson, *supra* note 16, at 213 (noting that the *corpus delicti* rule "arguably remains a justified, although minimal, safeguard against the infrequent risk that a criminal conviction on the basis of an out-of-court confession will be secured for a crime that occurred only in the confessing accused's imagination").

**18.** Though not an issue here, this Court has repeatedly held that an in-court "judicial" confession need not be corroborated. *Martin v. State*, 109 Tex.Crim. 101, 102, 3 S.W.2d 90, 90 (1927); *see also Richardson v. State*, 482 S.W.2d 645, 645–46 (Tex.Crim.App.1972).

**19.** *See* Dix & Dawson, *supra* note 16, § 31.336 at 218 (noting that "[t]echnical separation of each element of the offense and requiring introduction by the State of adequate independent evidence as to each element may not best serve the purpose of the corroboration requirement. Reasonable assurance that the offense was in fact committed may probably be provided without this sort of strict scrutiny of independent evidence"); 1 McCormick on Evidence § 146, at 526 (5th ed.1999) (noting that a growing number of states require only corroboration to prove that the "major" or "essential" injury or harm of the crime occurred, but not each and every element of the offense).

**20.** *See* Tex. Penal Cod 22.021(a)(1)(B)(iii).

**21.** 172 Tex.Crim. 554, 361 S.W.2d 390 (1962).

**22.** 172 Tex.Crim. at 554–55, 361 S.W.2d at 391.

independent evidence that a statutory rape had occurred on the day in question.[23]  In this case, however, appellant told the jury that he had put Julian's penis on his mouth, and Julian told his grandmother, who in turn told the jury, that appellant had "kissed" his private part.  If the jury believed this evidence, as it clearly did, then there is ample evidence that the assault occurred, albeit in a slightly different manner than that described in appellant's out-of-court confession.  That the crime occurred in a slightly different manner than appellant described in his out-of-court statement is immaterial to the determination whether the *corpus delicti* rule has been satisfied.  It has.  We therefore reverse the court of appeals and reinstate the full judgment and sentence of the trial court.

WOMACK, JJ., not participating.

---

**23.**  There was evidence that the girl, age 14, was not a virgin.  *Id.*