

## NUMBER 13-12-00047-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

DAVID JAMES GALLAGHER,                                          Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

**On appeal from the County Court at Law No. 3
of Montgomery County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellant, David James Gallagher, appeals his conviction for driving while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (West Supp. 2011). By three issues, which we renumber as two, Gallagher asserts that: (1) the trial court erroneously admitted his hospital medical records showing his blood alcohol and drug test results;

and (2) insufficient evidence establishes (a) the *corpus delicti* of driving while intoxicated; and (b) that Gallagher was the operator of the motor vehicle at the time of the car accident. For reasons stated below, we affirm.

## I. BACKGROUND[1]

Gallagher was charged by information in Montgomery County, Texas for driving while intoxicated, a Class B misdemeanor. *See* TEX. PENAL CODE ANN. § 49.04. The State presented the following evidence during Gallagher's jury trial.

In the early morning hours of May 14, 2011, Megan McDougald traveled down Walden Road in Montogmery County as the passenger of her friend's pickup. At that point, McDougald stated that she heard a car accelerate behind her driving around a curve in the road and witnessed that car "go off the road" and flip over. McDougald's friend stopped and McDougald called 9-1-1. She observed two males standing outside the wrecked vehicle.

Texas Department of Public Safety trooper Charles Williams responded to the scene shortly thereafter. Upon his arrival, he observed two males "standing . . . and walking around" the vehicle, which had sustained heavy front-end damage, heavy top-side damage, and appeared to "have been rolled over a couple of times." Trooper Williams later identified the two males as Gallagher and Nicholas Craig Williams. According to Trooper Williams, Gallagher stated that he was the driver of the vehicle. An initial check of the vehicle's license plate revealed Gallagher as the car's registered

---

[1] This case is before this Court on transfer from the Ninth Court of Appeals in Beaumont pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

owner. Additionally, a certified copy of the vehicle's state registration was admitted into evidence that listed Gallagher as the owner of the damaged vehicle.

Trooper Williams testified that Gallagher "had a strong odor of an alcohol[ic] beverage coming from his breath." Trooper Williams described Gallagher's eyes that night as "very glassy and red" with "droopy eyelids" and that Gallagher was "swaying while standing." According to Trooper Williams, Gallagher admitted to drinking "some beer" and "a little bit of everything" over the previous four hours. Trooper Williams also testified that Gallagher told him that he was driving down Walden Road and "failed to negotiate the curve" and "drove off the roadway and his vehicle rolled."

Trooper Williams administered three different field sobriety tests to Gallagher: (1) a horizontal gaze nystagmus (HGN) test, (2) a walk-and-turn test, and (3) a one-leg stand test.[2] According to Trooper Williams's assessment, Gallagher exhibited all six clues that indicate intoxication under the HGN test, four out of the eight clues under the walk-and-turn test, and two out of the four clues under the one-leg stand test. Trooper Williams admitted that Gallagher gave concise answers to his questions and did not remember Gallagher slurring his words. Nevertheless, Trooper Williams placed Gallagher under arrest for suspicion of driving while intoxicated. After reading Gallagher his statutory warnings, Trooper Williams requested a breath specimen. Gallagher initially agreed to provide a breath sample. However, en route to the jail—where the Intoxilyzer 5000[3] was located to collect Gallagher's breath sample—

_____

[2] More than an hour's worth of video footage taken from Trooper Williams's patrol car depicted all of the events described in the above-referenced paragraph. The video was played for the jury and was admitted into evidence as State's Exhibit 4.

[3] According to Trooper Williams, the Intoxilyzer 5000 is an instrument used to collect breath samples from individuals who are suspected of driving while intoxicated. He described it as a "large instrument" that "looks kind of like the old Atari [game] console . . . only larger" and is located inside of a

Gallagher began to complain of neck and back pain. Consequently, Trooper Williams transported Gallagher directly to Conroe Regional Medical Center.

While at the hospital, Gallagher refused Trooper Williams's request to obtain a blood specimen. Gallagher's hospital records, however, were admitted into evidence, including Gallagher's medical blood test results. The blood test results demonstrated a positive finding of alcohol consumption. Gallagher did not testify.

The jury ultimately found him guilty of the offense as charged. The trial court assessed punishment at a fine of $750.00 and 180 days' confinement in the Montgomery County Jail. The trial court then suspended Gallagher's sentence and placed him on community supervision for 18 months with certain terms and conditions. This appeal ensued.

## II. ADMISSIBILITY OF BLOOD TEST RESULTS

By his first issue, Gallagher asserts that the trial court erroneously admitted his blood test results included in his hospital records following the crash.

### A. Standard of Review

Admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (en banc)). Thus, we will affirm a trial court's ruling, so long as the ruling was within the zone of reasonable disagreement. *Moses*, 105 S.W.3d at 627; *see Montgomery*, 810 S.W.2d at 391 ("a trial court judge is given a 'limited right to be wrong,'

---

large cabinet inside the jail.

4

so long as the result is not reached in an arbitrary or capricious manner.") (internal citation omitted).

## B.   Discussion

Gallagher argues that the State failed to properly authenticate his blood test results and establish a proper chain of custody to support its admission.[4]   We disagree.

In order for the results of a blood test to be admitted into evidence, a proper chain of custody of the blood sample that was drawn from the accused and later tested must be established.   *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Moone v. State*, 728 S.W.2d 928, 930 (Tex. App.—Houston [14th Dist.] 1987, no pet.)).   Proof of the beginning and end of the chain will support admission, and any gaps in the chain go to the weight of the evidence rather than to its admissibility.   *See Penley v. State*, 2 S.W.3d 534, 537 (Tex. App.—Texarkana 1999, pet. ref'd).

Over his trial counsel's strenuous objections to its admissibility, Gallagher's medical records, including blood test results, were admitted as State's Exhibit 1.   Marcy Baxter, a registered nurse on duty at Conroe Regional Medical Center the morning that Gallagher was admitted, testified that she drew Gallagher's blood that day pursuant to the treating physician's orders.   Baxter admitted that she did not specifically remember drawing Gallagher's blood, but she testified as to the policies and procedures in place to ensure that blood samples match a particular patient prior to sending it to the laboratory

---

[4] The State elicited testimony from Texas Department of Public Safety technician Glenn Merkford, who reviewed Gallagher's blood test results.   Using a mathematical equation explained to the jury, Merkford opined from his review of the test results that Gallagher's blood alcohol content (BAC) was above the legal limit.

for testing. Baxter's testimony thus established the "beginning" of Gallagher's blood test's chain of custody.

The State then called Junnius Pollard, custodian of records at Conroe Regional Medical Center. Through Pollard's testimony, the State established that the records were made at the time of the event, by a person with knowledge, and that they were kept in the regular course of business by the hospital. *See* TEX. R. EVID. 902(10). Pollard's testimony thus proved the "end" of the blood test's chain of custody.

Therefore, in light of the State establishing both the "beginning" and "end" of the chain of custody, the trial court did not abuse its discretion in admitting Gallagher's blood test results. Moreover, any gaps in the chain go to the weight of the evidence rather than to its admissibility. *See Penley*, 2 S.W.3d at 537. Accordingly, we overrule Gallagher's first issue.[5]

### III.   SUFFICIENCY CHALLENGES

By his second issue, Gallagher asserts that the evidence insufficiently establishes (1) the *corpus delicti* of the offense and (2) that he operated the vehicle as charged.

### A. Standard of Review

When reviewing a defendant's sufficiency challenge, we view the evidence in the light most favorable to the verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (citing *Brooks v. State*, 323 S.W.3d 893, 902 (plurality op.)); *see Jackson v. Virginia*, 443 U.S. 307, 319

---

[5] During the submission of this appeal, the United States Supreme Court issued its opinion in *Missouri v. McNeely*, No. 11-1425, 2013 WL 1628934, —U.S.— (2013). Nevertheless, we find the *McNeely* decision inapplicable to the case at bar.

(1979).   The jury is the sole judge of the credibility of witnesses and the weight to be given to their testimonies, and the reviewing court must not usurp this role by substituting its own judgment for that of the jury.   *Montgomery*, 369 S.W.3d at 192.   Thus, our duty is "simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged."   *Id.* (internal citations omitted).   When faced with a record supporting contradicting inferences, we must presume that the jury resolved such conflicts in favor of the verdict, even if not explicitly stated in the record.   *Id.* (citing *Brooks*, 323 S.W.3d at 899 n.13).

The elements of the offense are measured as defined by a hypothetically correct jury charge.   *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).   Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.   *Id.*

### B.  Discussion

#### 1.  *Corpus Delicti*

The common law *corpus deliciti* rule requires that some independent evidence, outside of a defendant's extrajudicial confession, corroborates the occurrence of a specific kind of injury or loss[6] and a criminal agent.   *See Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002).   "The rule was not intended, however, to ensure that

---

[6] Some examples include a deceased person in the case of homicide, a house burnt in the case of arson, or missing property in the case of larceny.   *See Salazar v. State*, 86 S.W.3d 640, 644 (Tex. Crim. App. 2002) (citing 7 JOHN WIGMORE, EVIDENCE § 2072 (Chadbourne rev. 1978)).

all confessions are corroborated in specific details or to ensure that the suspect does not falsely confess to a crime that did occur but for which he had no culpability." *Id.* at 644–45. Thus, the *corpus delicti* rule is satisfied if some evidence outside of the extra-judicial confession, considered alone or in connection with the confession, shows that the crime actually occurred. *Id.* at 645.

Our inquiry in this case turns to whether any independent evidence proved that someone committed the crime of driving while intoxicated. In this case, a combination of the following evidence shows that the crime occurred, including:

(1) McDougald's testimony that she heard a car accelerate behind her on Walden Road, driving around a curve, and then witnessed that car "go off the road" and flip over;

(2) McDougald's observation that two males stood outside of the vehicle after the crash;

(3) Trooper Williams's observation that Gallagher and Williams stood outside of the heavily-damaged vehicle;

(4) Trooper Williams's testimony that Gallagher emitted a strong odor of alcohol and his eyes were red and glassy;

(5) the car registration listed Gallagher as the owner of the vehicle; and

(6) Gallagher's complaints of neck and back pain following the injury.

Therefore, in light of the foregoing independent evidence outside of Gallagher's extrajudicial confession(s), we conclude that sufficient evidence satisfies the *corpus deliciti* rule in this case to prove that someone committed the crime of driving while intoxicated. *See id.* at 645–46.

### 2. *Operation of the Vehicle*

Under Texas law, one is guilty of driving while intoxicated if the person (1) is intoxicated (2) while operating a motor vehicle (3) in a public place. *See* TEX. PENAL

CODE ANN. § 49.04.

Here, Gallagher admitted to Trooper Williams that he was the driver of the flipped vehicle. Gallagher was also present standing and walking around the damaged vehicle when Trooper Williams arrived, and the vehicle's state registration listed Gallagher as the vehicle's owner. Trooper Williams also testified that Gallagher told him that he was driving down Walden Road and "failed to negotiate the curve" and "drove off the roadway and his vehicle rolled." McDougald also testified that she witnessed two males standing outside of the vehicle shortly after the crash.

After viewing this evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Gallagher operated the motor vehicle as charged. Appellant's second issue is overruled.

## IV.   CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
25th day of April, 2013.

9