In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00439-CR
_____

**LEWIS RAY STROUD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 221st District Court**
**Montgomery County, Texas**
**Trial Cause No. 14-01-00539 CR**

**MEMORANDUM OPINION**

Arguing in part that insufficient evidence was admitted during his trial to allow the jury to conclude, beyond reasonable doubt, that he committed the offense of driving while intoxicated, Lewis Ray Stroud seeks to overturn the jury's verdict in his appeal. *See* Tex. Penal Code Ann. §§ 49.04(a), 49.09(b)(2) (West Supp. 2015).[1] Following Stroud's decision electing to have his punishment decided by

_____

[1] In this opinion, we cite to the current version of the statute if a subsequent amendment does not affect the outcome of this appeal.

1

the court without a jury, and based on its findings that Stroud had committed three prior felonies as alleged in his indictment, the trial court pronounced a thirty-five year sentence.

In five appellate issues, Stroud argues the evidence is insufficient (1) under the corpus delicti rule to corroborate his extra-judicial confession; (2) to prove that he operated the car; (3) to prove that he was driving, while intoxicated, in a public place; (4) to establish a link between the period in which he was intoxicated and his operation of a car he was found standing near on the evening he was arrested; and (5) to support the trial court's decision to assess court-appointed attorney's fees and costs against him in the judgment. After considering the arguments Stroud raises to alter the judgment, we agree that the trial court erred by ordering that he reimburse the State for the expenses it incurred for having an appointed attorney represent him; however, in all other respects, the trial court's judgment is affirmed. *See* Tex. R. App. P. 43.2(b).

## Background

The evidence admitted during Stroud's trial shows that one evening, just after midnight, Officer Justin Atherton responded to a report that a suspicious looking person, asking for help, had come onto the porch of a residence in Conroe seeking assistance in removing a car from the mud. According to Officer Atherton,

who testified during the trial, he responded to the request. As he approached the neighborhood containing the house of the family that had requested assistance, Atherton saw a car that was stuck in the mud at the end of a dead-end street. Officer Atherton explained that he noticed the back tires of the car were stuck in the mud and the front tires were up off the ground; he also noticed that the car had a log wedged underneath its front end. According to Officer Atherton, a man approached him after he got to the scene, told him that the car was his, that he had been driving, that he had dropped off a man named Juan at the residence, and that he became stuck after driving around a trailer to turn the car around. Officer Atherton indicated that he noticed a large circular area at the end of the street "where a U-turn would have been appropriate instead of [turning around] in the mud." Officer Atherton also stated that after he encountered Stroud that evening, Stroud told him that he had come from a residence on Dallas Street, that he had been travelling approximately thirty minutes before getting stuck, and that he had been there for about eight minutes before Officer Atherton arrived. Officer Atherton testified that during his encounter with Stroud, Stroud told him that he had been drinking. Officer Atherton indicated that he noticed Stroud's speech was slurred, that Stroud smelled of alcohol, that Stroud was unsteady on his feet, and that Stroud's eyes were red and glassy. Officer Atherton also stated that Stroud

told him he had taken a narcotic pain reliever along with some muscle relaxers around 6:00 p.m., and that before leaving Dallas Street, he had eaten and had consumed three sixteen ounce light beers. According to Officer Atherton, he searched Stroud at the scene, and found Stroud's car keys in Stroud's pocket.

Based on his suspicion that Stroud might be intoxicated, Officer Atherton explained that he performed various field sobriety tests that evening on Stroud, including a horizontal gaze nystagmus test. On the HGN, Stroud displayed six of six clues; these results, according to Officer Atherton, indicated that Stroud was "most likely intoxicated." Officer Atherton formed the opinion the evening of Stroud's arrest that Stroud was "not in control of his full mental and physical capabilities," and he thought that Stroud was intoxicated.

C.M., who was fifteen years old when Stroud approached her family's home to ask for help, also testified at the trial. C.M. was sixteen when the case was tried. C.M. explained that around midnight on the night of Stroud's arrest, her mother closed the door when a tall man came onto the porch of her family's home. She explained that the man then knocked very loudly on their door, that her mother opened it, and she heard the man on the porch say that he needed help getting his car out of the mud. According to C.M., her family refused to help the man because they thought he was drunk. After she saw the man leave the porch of the house,

4

C.M. indicated that she subsequently saw him sitting in the car that was stuck in the mud with the engine running, that she saw the man put the car in drive, and that she saw the man press on the accelerator in an effort to move the car.

C.M.'s testimony also raised the possibility that another man, possibly the same man that Stroud claimed had been driving his car that evening and who he dropped off near her home, was living in a shed near C.M.'s home. According to C.M., around the time of the incident involving Stroud, she was aware that a man named William[2] had been living in a shed that was on the property behind her home. The day after the incident, C.M. indicated that her mother made William move out of the shed because her mother did not want drunks coming there.

In his defense, Stroud attempted to show that he was not the person who had been driving the car that Officer Atherton found him standing near on the night Stroud's arrest occurred. During the trial, Stroud called K.G., a woman who explained that she had been at a party where Stroud had been present earlier that evening before he was arrested later that same evening. K.G. indicated that she had met Stroud once or twice before she saw him at this particular party, a party that she testified occurred at a residence whose address she could not recall. According to K.G., she saw Stroud and a man named Juan at the party that evening, and she

_____

[2] On cross-examination, C.M. indicated that her mother told her that William's last name was either Hernandez or Molina.

5

indicated that she last recalled seeing them at the party around 10:00 or 11:00 p.m. When she last saw them, K.G. stated that she thought Stroud and Juan were tipsy, but she did not think they were drunk. According to K.G., "intoxicated," to her, means "falling down drunk." K.G. testified that she saw Stroud and Juan leave the party together, and that when they left, Juan was driving the car that they left in.

Stroud elected not to testify during his trial.

## Issues One-Four

Because Stroud's first four issues concern the sufficiency of the evidence, we address the four issues together. When reviewing the defendant's challenge to the sufficiency of the evidence in an appeal, the appeals court is required to view the evidence from the trial in the light that most favors the jury's verdict in order to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The corpus delicti rule is a rule that concerns evidentiary sufficiency, and it applies in "cases in which there is an extrajudicial confession." *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015); *Carrizales v. State*, 414 S.W.3d 737, 743 (Tex. Crim. App. 2013). The application of the corpus delicti rule requires that the evidence admitted during a defendant's trial contain some evidence "outside of the extra-judicial confession which, considered alone or in connection with the

6

confession, shows that the crime actually occurred." *Salazar v. State*, 86 S.W.3d 640, 645 (Tex. Crim. App. 2002). In a case involving driving while intoxicated, the corpus delicti rule requires proof showing that someone operated a motor vehicle in a public place while intoxicated. *Layland v. State*, 144 S.W.3d 647, 650-52 (Tex. App.—Beaumont 2004, no pet.).

Stroud also suggests there is insufficient evidence linking the time showing when he was drinking to the evidence showing when he was driving the car. "[I]n order for the evidence to be sufficient to support a conviction for driving while intoxicated, there must be a temporal link between the [] defendant's intoxication and his driving." *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). The temporal link that is required, however, may be satisfied by circumstantial evidence. *Id.* For instance, "[b]eing intoxicated at the scene of a traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident, and the inference of causation is even stronger when the accident is a one-car collision with an inanimate object." *Id.*

First, we address Stroud's argument that the evidence in his case failed to satisfy the requirements of the corpus delicti rule. According to Stroud, there was evidence before the jury that someone else was driving his car when the car became stuck, and his confession is the only evidence before the jury showing that

7

he was the person who drove the car to the location where it became stuck. However, the corpus delicti rule does not require the State to prove the identity of the perpetrator of the crime; instead, the perpetrator's identity may be established by the jury's use of the perpetrator's confession. *Gribble v. State*, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990). Additionally, in Stroud's case, there is evidence, separate from Stroud's confession, showing that someone operated Stroud's car in a public place while intoxicated. *See Layland*, 144 S.W.3d at 650-52.

Evidence that establishes that someone committed the crime of driving while intoxicated included K.G.'s testimony, as she indicated during the trial that both Juan and Stroud were drinking at the party that she attended and that they were exhibiting the effects of alcohol when they left. Moreover, the evidence indicating that Stroud was by himself when he asked for assistance to remove the car from the mud, by himself when police arrived to investigate who was driving, and K.G.'s testimony that Stroud had been at another residence located several miles from the place the car was found allowed the jury to infer that Stroud was the person who operated the car on a public road. The fact that Officer Atherton found the key to Stroud's car in his pocket is additional circumstantial evidence tending to show that Stroud was the person who had been operating the car that evening. As factfinder, the jury was entitled to judge not only the credibility of each witness,

8

but to accept some portions of K.G.'s testimony and to reject other portions of it. *See Hughes v. State*, 897 S.W.2d 285, 289 (Tex. Crim. App. 1994). Moreover, we are required to defer to the jury's right to resolve the conflicts that exist in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence that is admitted during a trial. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) ("Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction."). Given all of the circumstantial evidence before the jury on the question of who was driving the car before it became stuck, and given the jury's right to weigh the credibility of the testimony and to make reasonable inferences from it, we conclude the verdict does not hinge solely on Officer Atherton's testimony about what Stroud told him that evening. We hold that the circumstantial evidence that was before the jury, when considered separate from the testimony about the statements Stroud made to Officer Atherton, were sufficient to show that Stroud was the person who drove the car that police found in the mud earlier that night on a public road and in a public place. *See Salazar*, 86 S.W.3d at 655-45.

In issue two, Stroud argues the evidence is insufficient to show that he had been operating a motor vehicle because no witness testified to having seen him

9

driving his car. For example, Stroud points to the evidence showing that he was not operating the car when Officer Atherton arrived. Although Stroud acknowledges C.M.'s testimony indicating that she saw him in his car after he left her porch, saw him shift the car into gear, and saw him press on the gas in an effort to free the vehicle from the mud, he points to the fact that C.M. admitted on cross-examination that she could not hear the car's engine and that she concluded the car's engine was running based on the fact that she saw the car's lights when she saw Stroud sitting inside the car. Stroud further notes that in her testimony, C.M. acknowledged that she had not seen who had driven the car into the mud.

With respect to the sufficiency argument Stroud raises in issues two through four, Officer Atherton's testimony can be considered in resolving Stroud's arguments that the evidence is insufficient to support his conviction. Stroud's issue two argument suggests the evidence is insufficient to establish the identity of the person who drove the car into the mud. However, other evidence in the record allowed the jury to conclude that Stroud was the driver who got the car stuck in the mud. The testimony shows that Stroud was alone when he was found standing near his car. The evidence the jury had before it includes Officer Atherton's testimony that Stroud told him he had driven the car from Dallas Street to the location where Officer Atherton found it, that the trip took him thirty minutes, and that he had

been there for about eight minutes. Where there is evidence separate from the defendant's confession that established the corpus delicti of the crime, the defendant's identity as the perpetrator may rest on his extra-judicial confession. *Folk v. State*, 797 S.W.2d 141, 144 (Tex. App.—Austin 1990, pet. ref'd). Issue two is overruled.

In issue three, Stroud argues that the evidence is insufficient to establish that he was driving in a public place. "'Public place' means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops." Tex. Penal Code Ann. § 1.07(a)(40) (West Supp. 2015). "The relevant inquiry is whether the public can enter the premises." *Perry v. State*, 991 S.W.2d 50, 52 (Tex. App.—Fort Worth 1998, pet. ref'd). The evidence is sufficient to prove the element of "public place" if the factfinder could reasonably infer that the defendant used a public road or street to reach his destination. *Loera v. State*, 14 S.W.3d 464, 468-69 (Tex. App.—Dallas 2000, no pet.).

In Stroud's case, the evidence before the jury shows that a public street is adjacent to the property where his car was found. Additionally, K.G., the woman at the party with Stroud, placed Stroud at a location that was not within normal

walking distance of the location where he was later found near his car. Officer Atherton indicated that Stroud told him he had been driving for approximately thirty minutes before his car became stuck, and that he travelled there from Dallas Street. Dallas Street, according to Officer Atherton, was an approximate ten-minute drive from the location where Stroud's car was found. Stroud's car was located in a place that is accessed by a public street, and Officer Atherton indicated that the lot where Stroud's car got stuck was accessible to the public. C.M. also indicated during her testimony that the area where Stroud's car was found was open to the public, and she stated that children in the neighborhood used the lot to play soccer. Given the testimony, the jury's conclusion that Stroud operated a motor vehicle in a public place and on a public road were reasonable conclusions from the evidence. We overrule issue three.

In issue four, Stroud contends the State failed to establish a temporal link between Stroud's operation of the vehicle and his intoxication. According to Stroud, the evidence is insufficient to show that he was intoxicated while he was driving his car because the statements that he made to Officer Atherton provided the only evidence that addressed when he was driving.

We disagree, as there was circumstantial evidence that allowed the jury to conclude that Stroud had been drinking shortly before getting behind the wheel of

12

his car. K.G. testified that Stroud left the party that evening around 10:00 p.m. or 11:00 p.m., she indicated that he had been drinking, and that he appeared "tipsy." Officer Atherton investigated the incident around midnight, a period of one or two hours after K.G. indicated that she had seen Juan and Stroud leave the party. Stroud told Officer Atherton he had been at the location where police found him with his car for approximately eight minutes. Moreover, the fact the car was found stuck on a log in an empty lot is a circumstance consistent with the conclusion that the car's driver was probably intoxicated. Officer Atherton indicated the accident could have been easily avoided because there was room to turn around on the road, testimony allowing the jury to infer that the driver's ability to properly operate the car was impaired. Stroud was intoxicated when Officer Atherton found him, and the evidence before the jury shows that he performed poorly on field sobriety tests. Moreover, there was no evidence before the jury to indicate that Stroud consumed alcohol after he got his car stuck in the mud. Based on the evidence before the jury, a rational factfinder could conclude, beyond a reasonable doubt, that Stroud's intoxication was temporally connected to the period that relates to the time Stroud was driving his car. *See Kuciemba*, 310 S.W.3d at 462-63. We overrule issue four.

13

Attorney's Fees and Costs

In issue five, Stroud contends the trial court erred by ordering him to pay attorney's fees and costs. The judgment identifies $4,972.40 in attorney's fees and $464.00 in court costs. Section 26.05 of the Texas Code of Criminal Procedure authorizes a trial court to assess attorney's fees against a criminal defendant who receives court appointed counsel. Tex. Code Crim. Proc. Ann. art. 26.05(g) (West Supp. 2015). However, once the trial court determines that a defendant is indigent, he is presumed to remain indigent throughout the remainder of the proceedings absent **evidence** showing that the defendant's financial circumstances have materially changed. Tex. Code Crim. Proc. Ann. art. 26.04(p) (West Supp. 2015) (emphasis added). In this case, the record does not contain any evidence to show that Stroud, when the judgment was rendered, had the ability to pay attorney's fees; consequently, the trial court erred by ordering that he pay legal fees. *See Roberts v. State*, 327 S.W.3d 880, 884 (Tex. App.—Beaumont 2010, no pet.).

The State concedes the appellate record lacks evidence to support a finding that Stroud's financial circumstances changed after the trial court found him to be indigent and appoint counsel to represent him. Given that we are required to presume that Stroud remained indigent based on the trial court's finding that he was indigent before the trial, we are required to delete the language in the

judgment assessing attorney's fees. *Mayer v. State*, 309 S.W.3d 552, 557 (Tex. Crim. App. 2010).

However, the rule regarding an indigent's inability to pay attorney's fees does not apply regarding various legislatively mandated fees that are generally referred to as costs of court. *See id.*; *Martin v. State*, 405 S.W.3d 944, 947 (Tex. App.—Texarkana 2013, no pet.). Accordingly, we disagree with Stroud that the trial court erred by awarding court costs, and we hold the trial court did not abuse its discretion by awarding costs in an amount that did not include attorney's fees. *Allen v. State*, 426 S.W.3d 253, 258-59 (Tex. App.—Texarkana 2013, no pet.).

Issue five is sustained in part. We modify the judgment to delete the portion of the judgment that requires Stroud to pay attorney's fees in the amount of $4,972.40. *See* Tex. R. App. P. 43.2(b). In all other respects, the judgment is affirmed.

AFFIRMED AS MODIFIED.

_____
HOLLIS HORTON
Justice

Submitted on October 13, 2015
Opinion Delivered June 1, 2016
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

15