

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0985-19

**ROBERT EARL HARRELL JR., Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### GRAYSON COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., RICHARDSON, NEWELL, KEEL, WALKER, and MCCLURE, JJ., joined. YEARY and SLAUGHTER, JJ., concurred.

### O P I N I O N

In March 2017, the Van Alstyne Police Department received a report at about 4:00 a.m. of a gray minivan being driven erratically. The caller, who was driving in the same direction, followed the minivan to a gas station, told police where it had been parked, relayed the vehicle's license plate information, then hung up. The caller did not describe the driver. Police found the minivan a few minutes later. The motor was off, and

Appellant was in the driver's seat with the seatbelt buckled. There is no evidence about where the keys were, but Appellant admitted that he had been driving. There were two passengers in the back. All three people in the minivan were intoxicated. The court of appeals held that the evidence did not tend to show the *corpus delicti* of DWI because, absent Appellant's extrajudicial confession, there was insufficient evidence that he operated the minivan. Because we conclude that the evidence is sufficient to support Appellant's conviction, we will reverse the judgment of the court of appeals and remand the cause for the lower court to address Appellant's remaining issue.

## I. BACKGROUND

### a. Facts

When the police received the early morning call about a reckless driver, who was "all over the road," they were also given the minivan's license plate information and told the location of that minivan once it pulled into a gas station off the highway. The caller (and another person in the vehicle) said that the gray minivan almost hit them "a couple of times." They did not identify Appellant as the driver, and they did not testify.

Officer Brandon Blair was dispatched. He testified that he arrived at the scene at 4:11 a.m., approached the parked minivan, and saw Appellant in the driver's seat with his seatbelt fastened. He also saw two passengers in the backseat. Officer Blair knocked on the driver's side window and could immediately smell the odor of alcohol when Appellant rolled down the window. He also noticed that Appellant had bloodshot eyes

and that his speech was slurred. Appellant told Officer Blair that he and the passengers had been at Choctaw in Oklahoma since 7:30 p.m. the evening before and that they had been drinking. At first, Appellant said that he had a "few beers" but then clarified that he had "about three or four." He also admitted that he had been driving. Officer Blair administered three standardized field sobriety tests (SFSTs), all of which indicated that Appellant was intoxicated, and Appellant was arrested. Appellant refused to provide a blood sample.

Both passengers admitted that they had been drinking when asked. The first passenger's response to the question was, "that's why we're back here." He also told Officer Blair they were from Arlington, that he owned the minivan, and that Appellant was "supposed to be the sober one." The passenger took three SFSTs, all of which indicated that he was intoxicated. The second passenger agreed to perform only the horizontal gaze nystagmus (HGN) test, which indicated that he was intoxicated, because he said that he had a previous leg injury. The passengers were never asked who had been driving. Officer Blair arrested them for public intoxication. He told them that he could not leave them at the vehicle after he left with Appellant because they would be a danger to themselves or the public. The passengers did not testify.

About three hours after making contact, Officer Blair obtained a search warrant and a sample of Appellant's blood. His blood-alcohol concentration was .095.

**b. Procedural History**

Appellant was charged by information with Class A misdemeanor DWI.[1] A jury convicted him, and the judge sentenced him to 365 days' confinement, probated for twenty-four months, and fined him $1,000.00. Appellant appealed, arguing that the evidence was legally insufficient. The court of appeals agreed and rendered an acquittal. *Harrell v. State*, No. 05-18-01133-CR, 2019 WL 3955774, at *3 (Tex. App.—Dallas Aug. 22, 2019) (mem. op., not designated for publication). The State then filed a petition for discretionary review in this Court, arguing that the court of appeals erroneously merged the *corpus delicti* doctrine and the *Jackson* legal sufficiency review.

### III. EVIDENTIARY SUFFICIENCY

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). The evidence is legally sufficient if a rational jury could find each essential element of the offense beyond a reasonable doubt. *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). When reviewing the sufficiency of the evidence, appellate courts consider all the admitted evidence and view it in the light most favorable to the verdict. *Id.* "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

---

[1]Tex. Penal Code §§ 49.04(b), 49.09(a). DWI is a Class B misdemeanor unless the State alleges a prior conviction under Section 49.09 of the Texas Penal Code. *Id.* § 49.04(b). Here, the State alleged a Class A misdemeanor because it alleged that Appellant had been previously convicted of DWI once before. *Id.* § 49.09(a).

In cases involving extrajudicial confessions when "beyond a reasonable doubt" is the burden, not only must the evidence be legally sufficient under *Jackson* but also it must tend to show the *corpus delicti* of the offense. *Miller v. State*, 457 S.W.3d 919, 924 (Tex. Crim. App. 2015) (citing *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013)). To determine if the *corpus delicti* of an offense is shown, an appellate court must examine all the evidence except the defendant's extrajudicial confession to see if it shows that "the 'essential nature' of the charged crime was committed by someone." *Id.* (citing *Hacker*, 457 S.W.3d at 866 (emphasis added); *Salazar v. State*, 86 S.W.3d 640, 645 (Tex. Crim. App. 2002)). The purpose of the *corpus delicti* rule is to prevent convictions based on confessions to imaginary crimes. *Id.* (quoting *Carrizales v. State*, 414 S.W.3d 737, 740 (Tex. Crim. App. 2013)). The analysis focuses on only whether someone committed the crime, but it is not as rigorous as the *Jackson* legal sufficiency review. *Threet v. State*, 250 S.W.2d 200, 200 (1952). The *corpus delicti* of DWI is that someone operated a motor vehicle in a public place while intoxicated. *Id.*

## IV. ANALYSIS

The court of appeals began its analysis by separately discussing both the *corpus delicti* doctrine and *Jackson* legal sufficiency review,[2] but then it seems to have blended aspects of the doctrines when applying them. For example, in rejecting the State's *corpus delicti* argument, the court of appeals said that there was no evidence except Appellant's

---

[2]*Harrell*, 2019 WL 3955774, at *2.

extrajudicial confession "from which a jury could rationally conclude that [Appellant] was operating the vehicle in a public place while intoxicated." *Harrell*, 2019 WL 3955774, at \*3. In a *corpus delicti* analysis, the extrajudicial confession of a defendant is not considered, and identity need not be proven. *Id.* (citing *Hacker*, 457 S.W.3d at 866 (emphasis added); *Salazar*, 86 S.W.3d at 645). But under *Jackson*, all the admitted evidence is considered, and proof of identity is required. *Id.*

Appellant argues that courts, including ours, have in the past required proof of identity to satisfy the *corpus delicti* doctrine, and he directs us to *Threet v. State*, 250 S.W.2d at 200 and *Arocha v. State*, No. 02-14-00042-CR, 2014 WL 6997405, at \*2 (Tex. App.—Fort Worth Dec. 11, 2014, no pet.) (mem. op., not designated for publication). Appellant, however, mischaracterizes those cases. This Court in *Threet* and the court of appeals in *Arocha* emphasized that identity is not part of the *corpus delicti* of DWI. *Threet*, 250 S.W.2d at 200; *Arocha*, 2014 WL 6997405, at \*2, n.4.

The evidence in this case is legally sufficient both under *Jackson* and to satisfy the *corpus delicti* doctrine. The evidence is sufficient under *Jackson* because a rational jury could find each essential element of the offense beyond a reasonable doubt when considering all the admitted evidence, including Appellant's extrajudicial confession. Not only did Appellant confess that he had been driving the same minivan identified by the 911 caller on the highway but also Appellant was found in the driver's seat with the seatbelt buckled, and the first passenger told Officer Blair that Appellant was "supposed

to be the sober one." There is also ample evidence that Appellant was intoxicated. In addition to the failed SFSTs, he had bloodshot eyes and slurred speech. Also, testing of the blood sample taken three hours later showed Appellant's BAC was over .09.

The evidence is also sufficient to show the *corpus delicti* of DWI. Absent Appellant's confession, the evidence still tends to show that Appellant and the passengers were traveling together in the same minivan identified by the 911 caller and that Appellant was operating it. As we have noted, the minivan had the same license plate as reported by the 911 caller and was found where the caller said the driver parked it. When Officer Blair approached the minivan, he saw Appellant in the driver's seat with the seatbelt buckled, and the first passenger told Officer Blair when asked about Appellant being intoxicated that Appellant was "supposed to be the sober one." The evidence tends to show that someone in the minivan was operating it on the highway when 911 was called. (While the evidence indicates that Appellant was driving, we stress that proof of identity is not required in a *corpus delicti* analysis.)

The next question is whether whoever operated the minivan in a public place was intoxicated within the meaning of the DWI statute. We find that the answer is yes. All the people in the minivan were intoxicated. Appellant was arrested for DWI because the officer believed that Appellant had lost normal control of his mental or physical faculties[3] and was operating a motor vehicle in a public place. TEX. PENAL CODE § 49.01(2)(A)

---

[3]Police later obtained a blood sample from Appellant three hours later via a search warrant, and his BAC was over still over .09.

(one way a person can be intoxicated under the DWI statute is if they do not have "the normal use of [their] mental or physical faculties by reason of the introduction of alcohol . . ."). If Appellant had been driving, he was guilty of DWI. The passengers were arrested for public intoxication because they were a danger to themselves or others due to their intoxication. *Id.* § 49.02(a) ("A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another."). If they had been driving, they also would have been guilty of DWI.

## V. CONCLUSION

The *corpus delicti* rule has been satisfied and the evidence is legally sufficient because it tends to show that someone operated a motor vehicle in a public place while intoxicated. We reverse the judgment of the court of appeals and remand the cause for it to address Appellant's remaining issue.

Delivered: April 21, 2021

Publish